The plaintiff recovered a verdict of $4,000 damages resulting, as he claims, from a personal injury produced by the defendant's negligence. The learned court *Page 81 
below affirmed the judgment entered upon the verdict, but since the decision was by a divided court the appeal presents the question whether there was any evidence for the jury which supports or tends to sustain the verdict.
The plaintiff was not a passenger nor an employee, but in the language of the record was "stealing a ride" from New York to Rochester. He did not get onto the train at the New York station, but going outside went up the street to the second bridge north of the station, climbed the fence, got on the tracks, and when the train going north came to a stop at that point he got on the front platform of the third car from the engine, which was the baggage car, and sat down in the doorway. The train started and he sat there for nearly five hours until the train reached Rensselaer, opposite Albany, and there the plaintiff met with the accident or injury resulting in the loss of his arm, to recover for which the action was brought. The plaintiff undertook the journey in the manner stated on the night of the 23rd of March, 1900, leaving New York shortly after nine o'clock and arriving at Rensselaer about two o'clock the next morning. These facts are all stated by the plaintiff himself, who was the principal witness at the trial, and as to the accident the only witness. He says that as the train was approaching the bridge over the Hudson river at Albany it slowed up, and when it was quite dark he saw a man running alongside the train which was moving at a speed that the plaintiff described as slow and the defendant's witnesses as fast. The plaintiff describes the man as dressed like a railroad man, with the coat and cap usually worn by trainmen, carrying a lantern, and after running along with the train towards the engine for some minutes he returned and was proceeding towards the rear of the train when he discovered the plaintiff still sitting in the front doorway of the baggage car. He got onto the platform with the train in motion, asked plaintiff what he was doing there, and then kicked him off the car with one kick, and the plaintiff falling off, his arm was crushed under the moving train and the injury complained of was the result. The plaintiff says he *Page 82 
was kicked off on the left side of the train, though when found a few minutes later he was on the right of the track on a six-foot space between tracks.
The plaintiff was not familiar with the locality, and hence might well be honestly mistaken with respect to surrounding objects and as to whether he was kicked off on the right or left of the train. In whatever way the injury was inflicted it is quite certain that it occurred at the point where he was found by the operatives of the yard and taken to the hospital in Albany. The question in the case is whether there is any proof that he was kicked off at all. The plaintiff was concededly a trespasser, and the defendant owed him no duty, except to refrain from wantonly or unnecessarily injuring him. The theory of the action is that the plaintiff being on the front platform of the baggage car, sitting in the doorway, was unnecessarily and wantonly assaulted by one of the defendant's servants, resulting in the injury complained of. This allegation is put in issue by the answer, and the plaintiff was bound to prove it. It is not claimed by the plaintiff that he knew the man who thus assaulted him. All he professed to know about him was that he was dressed as described, had the lantern and was running ahead towards the engine and had a "sandy mustache." On the part of the defendant every operative on the train and every man who had anything to do with the management or operation of it, from the highest to the lowest, was sworn, and they all testified in the clearest terms that they never touched the plaintiff or even knew that he was on the train at all. The place where the plaintiff was upon the baggage car was favorable for concealment, since the only two cars in front were the express cars that were always kept locked, and the baggage car was cut off from any connection with the rest of the train by the piles of baggage with which it was filled. This accounts for the fact that he made the journey unobserved. The plaintiff did not attempt to identify any of the operatives of the train as the person who assaulted him, nor was it even shown or claimed that any of them had at the time of the injury or at any time a sandy *Page 83 
mustache, or that any of them from the color of the hair or the general complexion could have produced one at the time.
If the positive evidence of all the operatives on the train on the night in question stands uncontradicted and unquestioned, it must be accepted as true. The jury could not reject it on the ground that they were in the employ of the defendant. (Hull v.Littauer, 162 N.Y. 569.) They had no legal or pecuniary interest in the controversy. What the plaintiff testified to was in no proper sense a contradiction. All that the plaintiff stated might be true without any impeachment of the operatives and trainmen, especially as it appears that in the same yard the operatives of the Boston and Albany railroad were to be found. The plaintiff gave no proof to show that any servant of the defendant assaulted him. In view of the positive evidence of all the defendant's servants on the train, and in the absence of any contradiction of it on the part of the plaintiff, it cannot be said that he gave any evidence in support of the issue or that the verdict is supported by any evidence. At best there was but ascintilla, which in law is only another way of saying that there was no evidence. (Baulec v. N.Y. H.R.R. Co., 59 N.Y. 356
-366; Pollock v. Pollock, 71 id. 137, 153; Pauley v.S.G. L. Co., 131 id. 90-98; Laidlaw v. Sage,
158 id. 73-97; Linkauf v. Lombard, 137 id. 418; Hemmens v.Nelson, 138 id. 517-529; Improvement Co. v. Munson, 81 U.S. [14 Wall.] 442.) It is not necessary to refer here to that part of the argument of the learned counsel for the defendant wherein he has attempted to point out that the plaintiff's version of the transaction cannot possibly be true. It is claimed that when the plaintiff's testimony on direct and cross-examination is taken as a whole, it is so improbable and contradictory as to be incredible. We prefer, however, to place the judgment on the ground that when the proofs were all in there was no evidence upon which the jury could find that the defendant's servants, or any of them, assaulted the plaintiff and inflicted the injury, and the exception of the defendant's counsel to the submission of the case to the jury should be sustained. *Page 84 
The judgment should be reversed and a new trial granted, costs to abide the event.
PARKER, Ch. J., BARTLETT, HAIGHT, VANN and CULLEN, JJ., concur; GRAY, J., not sitting.
Judgment reversed, etc.