ANNA GRUHN, as Administratrix of the Estate of KURT GRUHN, Deceased, Plaintiff, *v.* J. H. TAYLOR CONSTRUCTION Co., INC., et al., Defendants.

Supreme Court, Trial Term, New York County, March 2, 1943.

*Alfred Ekelman* and *Samuel T. Baker* for plaintiff.

*Julius S. Christensen* and *Thomas F. Harrigan* for J. H. Taylor Construction Co., Inc., defendant.

*Abraham D. Shackton* and *William J. McArthur* for Lebanon Hospital Association of the City of New York, defendant.

*Michael A. Hayes* for Otis Elevator Company, defendant.

*Clarence E. Mellen* for Wielandt Construction Co., Inc., defendant.

EDER, J. The plaintiff, as administratrix of the goods, chattels and credits of Kurt Gruhn, deceased, sued to recover damages for the wrongful death of her husband. He was an electrician employed on a construction job, the erection of a hospital building; he was found lying in the pit of an unguarded elevator shaftway; "the elevator shafts were used throughout the construction of the building as a place to hoist material" (Testimony of Rasmussen, s. m. pp. 262–263), and both owner and contractor were under an express statutory duty (Labor Law, § 241) to furnish protection to workmen there against falling down such shaftway by maintaining proper barriers or safeguards. (*Amberg* v. *Kinley*, 214 N. Y. 531, 535; *Stern* v. *Great Island Corp.*, 250 App. Div. 115.)

The accident happened on October 10, 1941. There is evidence by plaintiff that decedent and two other workmen there, Carlson and Kretchmar, at the conclusion of the day's labor, proceeded to the locker room which was on the street floor; that they saw the decedent leave the locker room; that they did not see him again and, noticing his absence, that Kretchmar obtained a flashlight and accompanied by Carlson they found decedent lying in the shaftway at the bottom of the pit — this not more than ten minutes after decedent had left the locker

room; that at that time there was no guardrail or barrier around or at the shaftway. There is also the testimony of Inspector Wolf of the Labor Department that on September 24th and on October 2, 1941, he found the guardrail around the shaft insufficient and had issued an order and had given notice to the defendant Taylor Company, through its superintendent Rasmussen, to repair it; and that on October 8th he found no guardrail there at all, that it had been destroyed and that he had issued an order to replace it and furnish protection.

The defense offered no proof to the contrary; the defense called Rasmussen — who was the general superintendent on the job for the Taylor Company, the contractor — who neither affirmed nor denied the fact, his answer being, " I don't remember seeing any [barrier] there on that particular day.'' Thus, on this feature, plaintiff's evidence stood without contradiction.

As to the cause of death, the medical proof of the plaintiff, which consisted of the testimony of physicians, was that the decedent died of delirium tremens precipitated by the injuries which he sustained. No controverting evidence was offered.

Defendants sought to convey the impression that the decedent freely imbibed intoxicants and that he drank while at work; they introduced a hospital record in which there was an entry that shortly after his admittance he received a pint of whisky and from this incident or circumstance proffered the implication that he presumably consumed it; there is no direct proof that he did; from this they endeavored to create the inference or the belief that the decedent did not die as a result of his injuries but from delirium tremens alone, produced by his consumption of this pint of whisky, as an independent and intervening cause. Defendants called no medical witnesses but sought to impel this deduction through the cross-examination of plaintiff's medical witnesses, who definitely stated that decedent's injuries were the direct or the contributing cause of death. Thus, the proof of plaintiff stood uncontroverted yet a verdict for defendants was returned, and it is plaintiff's contention that it should be set aside as being contrary to the evidence and as contrary to law and a new trial granted.

There is the further ground urged, viz., that the cross-examination of decedent's wife was of an irrelevant, immaterial and inflammatory nature intended to create prejudice against the plaintiff, and that it is reflected in the verdict returned.

Motion made upon rendition of verdict was denied and application is now made for reconsideration (*Matthews* v. *Herdt-*

*felder,* 60 Hun 521); the application is entertained in the interests of justice.

The general rule is that a verdict returned contrary to and in disregard of clear and undisputed evidence will be set aside (*Algeo* v. *Duncan,* 39 N. Y. 313; *Cunningham* v. *Gans,* 79 Hun 434), and such is the rule, too, where the witnesses' testimony is unimpeached by cross-examination (*Dolsen* v. *Arnold,* 10 How. Pr. 528, 531). This does not mean that uncontradicted evidence is all-conclusive on the jury, for it may be improbable or incredible and other elements may enter which may modify this general rule; physical facts or matters of common knowledge may prove or tend to establish the contrary as the fact or it may be apparent that the witness is untruthful (46 C. J., New Trial, §§ 137, 138); but in the absence thereof the jury cannot be arbitrary or capricious and, when a jury refuses upon undisputed facts to return a proper verdict, it is a firmly imbedded rule that it becomes the duty of the court to set it aside and order a new trial, and " a verdict may properly be said to be capricious if it is against the overwhelming weight of the evidence " (*Watson* v. *Paschall,* 100 S. C. 281, 283); and a verdict is arbitrary when the jury's finding is without any supporting evidence. (*Second Nat. Bank* v. *Weston,* 172 N. Y. 250, 258, 259; *Johnson* v. *N. Y. C. & H. R. R. R. Co.,* 173 N. Y. 79, 83; *Hull* v. *Littauer,* 162 N. Y. 569, 572.)

In the instant case for the jury to conclude that there was no breach of a statutory duty by the defendants would constitute an arbitrary finding because the proof is conclusive that no barrier, safeguard or guardrail was maintained at the shaft at the time of the accident; and if by reason of such failure to furnish the statutory protection decedent fell into and down the shaftway and sustained said injuries and death resulted therefrom, the plaintiff's right to recover is clear. On the other hand, if it be assumed that the jury found such breach of duty and violation of the statute to exist, but found for the defendants on their claim that decedent died of delirium tremens as an independent and intervening cause and not by reason of the injuries which he suffered — that such injuries were not an accompanying contribution resulting in death — thereby discrediting or disregarding plaintiff's medical proof, such a finding would not be a deduction predicated on the proof adduced but must necessarily rest on capricious disbelief and upon arbitrary assumption, for the record is destitute of any evidence to support a finding that death resulted from delirium tremens as an independent factor. A verdict which the law does not

authorize the jury to render on the evidence because the conclusion drawn is not justified thereby is a verdict contrary to law.* (*Tucker* v. *O'Brien,* 117 N. Y. S. 1010; *Archibald* v. *Hill Sanatorium,* 121 Misc. 193.)

In view of the nature of the evidence introduced by plaintiff and the lack of evidentiary contradiction thereof by direct or circumstantial evidence, the verdict returned is thus one contrary to the evidence and contrary to law.

I am disposed to the view, also, that the verdict was the result of passion and prejudice aroused against the plaintiff, deliberately injected by counsel to influence the jury and designed to attain that objective. The plaintiff was cross-examined on matters wholly unrelated and entirely foreign to the subject matter of the litigation and utterly immaterial thereto and it is of such a character that this court cannot conscientiously overlook it and say that it did not have its effect.

The decedent was of German descent; his young son, though born here, now resides in Germany and has resided there for some years. Without any preliminary or other foundation to justify the line of interrogation pursued, plaintiff was asked on cross-examination if the decedent (her husband) was ever in jail and if that was the reason why he had not contributed to her support; whether he was arrested — if she knew — as one of the men involved in the bombing of the World's Fair; whether he was arrested in 1939 for cutting the electric wires that ran to the British Pavilion in the World's Fair. She said she knew nothing of it, yet the inquiry was pressed.

As I recall it, the bombing of the World's Fair culminated in injury and death to several persons, among them members of the police force of New York City; it was a vicious and revolting crime and was very widely publicized and became a matter of common knowledge; the bitterness of feeling engendered thereby was but a natural emotional reaction on the part of all law-abiding and decent individuals. Such a crime indicated that it was perpetrated by Nazi sympathizers and the feeling of intense bitterness of the American citizen against the Axis powers and against the German nation in particular was and still is a matter of common knowledge.

It is also common knowledge that with this nation at war with Germany there exists bitter and intense hatred against Nazi nationals, sympathizers and supporters. All of this cross-examination had not the slightest bearing on the simple and concrete issues involved and this unwarranted and intemperate indulgence by examining defense counsel was conceived to

create the impression that the decedent was a Nazi sympathizer and supporter, was a participant in this diabolical crime, and was at heart an enemy of our country, and such form of cross-examination was intended to inflame the jury and prejudice it against the plaintiff in the consideration of the cause and, by ultimate psychological reaction, influence and produce a verdict for the defendants by reason thereof. There was not an iota of evidence introduced which in the slightest degree warranted this course of procedure.

While no protest was made by plaintiff's counsel at the time and generally it should be made if it is to be advanced as a ground of complaint, nevertheless, the court may, in the exercise of its discretion and to the end that the interests of justice may be best served, allow a new trial because of such highly prejudicial conduct. " It is conceivable that a misstatement by counsel could be of such character as to hide for the time the mischief involved, and of such importance as to warrant a retrial, although first presented to the court in the motion for new trial " (*Empire Plow Co.* v. *Berthold & Jennings Lumber Co.*, 237 S. W. 137, 139 [Mo. App., not officially reported]), and this was also the rule at common law.

In *Hodgkins* v. *Mead* (119 N. Y. 166, 171), the court declared: " In following rules of practice for the due and orderly administration of the law, care should be taken that justice is not smothered by a too slavish adherence to the mere forms and technicalities of procedure."

In *Cherry Creek Nat. Bank* v. *Fidelity & Casualty Co.* (207 App. Div. 787, 791), the court said: " It is time that the bar should realize that when counsel in a close case resort to such practices to win a verdict, they imperil the very verdict which they thus seek."

It is of increasing importance, especially in a time like the present when we are at war with the Axis powers, to see to it that their nationals, or persons of foreign descent who are their sympathizers or supporters, or persons suspected of possessing such tendencies, be accorded a fair and impartial trial in our courts of justice and that nothing should be done to prevent it; and this course is necessary, and indeed indispensable, not only to maintain and uphold the glorious Anglo-American tradition of fair trial and impartial justice for all, but by example inculcate it in those devoid of it and inspire them with a like desire. Thus, an alien enemy is permitted to resort freely to our judicial tribunals, as suitor or defendant (*Kaufman* v. *Eisenberg*, 177 Misc. 939), and it would be a

perversion of that noble tradition, so highly esteemed, to permit a verdict to stand which is procured under the circumstances shown.

I have carefully read and scrutinized the record of the trial to ascertain if there is any basis upon which the verdict of the jury may find support, and after due reflection it is my considered judgment that the grounds of the application are well founded and that the relief sought should be granted; and in coming to this decision I am not unmindful that a Trial Judge should be sure that his conclusion is more than the reflex of his opinion.

For the reasons stated, and in the interests of justice, the motion is granted, the verdict set aside and a new trial ordered.

At the trial it was stipulated between counsel for the present defendants, Taylor Construction Company and Lebanon Hospital Association, that the issues arising between them on the cross complaint of the latter against the former should be decided by the court both as to any issue of fact and of law, findings being waived; and both sides consented that decision be reserved and that the court either enter judgment dismissing the cross complaint or grant judgment thereon as if no jury were present. This arrangement was made prior to summation of counsel and charge of the court. In view of the jury's verdict in favor of both defendants this court stated that the verdict thus returned disposed of the cross complaint and thereupon the same was dismissed. In view of the disposition now made upon this motion, the defendant Lebanon Hospital Association will be restored to the *status quo* and its cross complaint against defendant Taylor Construction Company is reinstated.

Settle order.