JOSEPH CASONI, as Administrator of the Estate of JEAN I. CASONI, Deceased, Plaintiff, *v.* TOWN OF ISLIP, Defendant.

Supreme Court, Trial Term, Suffolk County, August 15, 1950.

*Joseph H. Wackerman* for plaintiff.

*Guy O. Walser* for defendant.

COLDEN, J. This is a motion by the plaintiff to set aside a ten to two verdict rendered by the jury in favor of the defendant. The plaintiff as administrator sought to recover damages by reason of the death by drowning of his daughter, Jean Irene Casoni, due, he alleges, to the negligence of the defendant.

Plaintiff's daughter, at the time of the drowning on August 29, 1948, was fourteen years of age, was a student at Bay Shore High School, was approximately 5 feet, 3 inches tall, and weighed between 130 and 140 pounds. She and a friend, Emma Jane Smith, a girl eighteen years of age, also a resident of Bay Shore, were wading on a public beach owned, operated and controlled by the defendant and known as "East Islip Bathing Beach." It includes the bed of Great South Bay and is a smooth, sandy, gradually shelving, gently sloping beach, which extends for a great distance out into the waters of Great South Bay. The defendant maintains a boardwalk extending out into the bay for a distance of 130 feet and beyond that a float approximately sixty feet from the boardwalk.

The two girls, neither of whom could swim, were wading out in the water holding hands and singing. Other people were in the water, some out a greater distance. Suddenly Jean sank down in the water, released her hand from Jane Smith, then grasped Jane's ankle and pulled Jane down with her. Jane Smith came to the surface and screamed. Her screams were

heard by one of the witnesses, Alexander Kiengler, who was nearby and who went to Jane's rescue. The rescuer of Jane was unaware that Jean Casoni was in the water and did not discover that fact until Jane Smith had recovered consciousness ashore. A rescue party then returned to the scene where Patrolman Michael Turoczi found that he "could not touch bottom." A boat was brought to the scene and the child's body was brought up by means of a drag.

In 1946 the Town of Islip added to the beach surface by pumping sand in from the bay bottom, from a distance of approximately 600 feet. In dredging for this sand by the use of a hydraulic dredge, the defendant created a depression covering an area approximately one-half an acre in extent and as deep as eleven feet. At the edge of this hole, on the shore side, the water was approximately four feet deep at high tide and something over three feet deep at low tide. At no time did the defendant in any manner whatever give any warning to persons using this public bathing beach of the creation and existence of this depression which had been created by the dredging. No warning signs were displayed and no effort was made by the defendant to put anyone on notice. The defendant employed no lifeguards. Even though the beach was intended for the use of children, no provision was made for their protection or supervision.

Notwithstanding the provisions of regulations 16 and 17 of chapter VI of the Sanitary Code, established by the Public Health Council of the State of New York, pursuant to section 2-b of the Public Health Law, the defendant failed to provide lifesaving equipment and failed to provide for the personal supervision of the beach by an operator or competent attendant trained in lifesaving procedure.

This court is of the opinion that the negligence of the defendant was established beyond the shadow of a doubt.

The defendant had the burden of establishing, by a preponderance of the credible evidence, the contributory negligence of the deceased girl. Our inquiry on this motion is first, was there any proof of contributory negligence which was a proximate cause of the happening of this accident? The defendant urges three acts which the defendant asserts were proximate causes of the drowning of this girl, the first is that one leg was shorter than the other (approximately one-fourth inch); the second is that she walked out too far; the third is that there was a high wind and high waves.

It was the habit of the users of this beach to walk out as far as this girl did and to a greater distance. The survey which was

offered in evidence shows the very gradual shelving or sloping of the bay bottom. It was not the distance that the girl walked out into the bay, but it was what suddenly impeded her progress when she walked into this trap which had been dug by the defendant, and of which no warning was given to any man, woman or child who used this beach. The fact that one leg was one-fourth inch shorter than the other, certainly was not the cause of her falling into the trap. There was no evidence of wind or waves at the time of the happening of the accident, although there was some evidence that an hour or so later the water was rough. An examination of the map of this beach, with this gradual increase in depth, would indicate little likelihood of waves of such force and violence as defendant seeks to suggest. An examination of the record will indicate that these waves are mostly the product of a vivid imagination. On the very day that this accident happened, other users of the beach were the same distance, or farther out than the deceased girl, but fortunately for them they did not walk in the direction of the trap or hole which had been created by the defendant. But if it be assumed that there were wind and waves, there was no causal connection between them and the happening of the accident. On the issue of contributory negligence as a defense, the verdict should have been for the plaintiff, first because defendant failed to establish such defense by a preponderance of the credible evidence; second, that even though the deceased were negligent, her negligence was not a proximate cause of the accident; and third, assuming that the deceased girl were negligent (which this court does not find), under the rule laid down in *Bragg* v. *Central New England Ry. Co.* (228 N. Y. 54), the defendant is liable, irrespective of the negligence of the deceased. In the *Bragg* case, a death action, a railroad section hand, exhausted from overwork, fell asleep on a railroad tie adjacent to a railroad track. He knew that a work train was operating in the vicinity and a little later the work train, proceeding at a speed of twelve miles an hour, ran over and killed him. The trial court charged the jury that the deceased was guilty of negligence, but the Court of Appeals held that the negligence of the decedent was not the proximate cause of his injury and that when the engineer discovered that the decedent was inert or unconscious, or for some reason could not or would not safeguard himself, then the engineer should have sought to avoid the accident. Here, in the present case the defendant knew of the peril to which all persons using the beach were subject if they came in the vicinity of the hole created by the defendant.

So in *Storr* v. *New York Central R. R. Co.* (261 N. Y. 348, 351):
" If one by a negligent act places himself or his property in a position of danger his negligence does not contribute to defeat his recovery if the situation was known to the defendant in time to avert the consequences of plaintiff's own negligence. In such a case the defendant's negligence is the sole cause of the injury."

In the case of *Klinkenstein* v. *Third Ave. Ry. Co.* (246 N. Y. 327) the court examined the question of the proximate cause of the accident in which the defendant railroad company sought to escape liability for a collision with the bus because the bus was operated upon a public highway without proper consents and authority. Said the court, at page 331: " Whether the failure of the plaintiff to obtain the proper consents and authority to operate the bus line prevents the recovery of damages for negligence depends upon whether such failure caused or aided in causing the accident; whether there be a connection, a logical connection, a reasonable sequence of events between the lack of authority to operate the bus line and the collision." So, in our case, the question is as to whether there was " a reasonable sequence of events " between the one-fourth inch shortage of the girl's leg, the fact that she had waded out a distance from the shore, or the alleged " wind and waves " and the happening of the accident.

Said Judge CRANE, in the *Klinkenstein* case (*supra*, p. 332): " Therefore, if the bus had been carrying goods or had been used for other purposes than carrying passengers, the accident would have happened just the same. Again, if the plaintiff had been running the passenger bus legally, had all the consents required by law, the accident likewise would have happened. Thus we see that there is no connection whatever between the failure to obtain the permission to carry passengers for hire and the collision due to the negligence of the defendant's motorman. Of course it can be said that if the plaintiff could not have carried passengers for hire, he probably would not have operated the bus line. *Of course if the bus had not been there, it would not have been struck. It was there, it was damaged, as we must assume for this case, through the negligence of the defendant, and the question is not what caused it to be there, but what, if anything, on the plaintiff's part, contributed at the time in causing the collision.*" (Italics supplied.)

Precisely the same test may be applied here. Of course if the deceased girl had not been at the beach she would not have been drowned. Or if she had not waded into the water she would not have been drowned. Certain it is that she was not chargeable

with any negligence during the walk from the shoreline to within an inch or two of the hole. It was only when she proceeded from a place of safety to a place of unknown danger created by the defendant that the accident occurred.

In *Grand Trunk Ry. Co.* v. *Ives* (144 U. S. 408) the court said, at page 429: " Without going into a discussion of these definitions, or even attempting to collate them, it will be sufficient for present purposes to say that the generally accepted and most reasonable rule of law applicable to actions in which the defence is contributory negligence may be thus stated: Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years, (having been first enunciated in *Davies* v. *Mann,* 10 M. & W. 546), that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence."

In *Garrette* v. *State of New York* (197 Misc. 842, 844–846) the court said: " It is the duty of the State to guard against such dangers as could or ought to have been anticipated or foreseen in the exercise of reasonable prudence and care. * * * Negligence is indicated in failing to maintain warning signs such as are commonly found at places where less danger is to be apprehended than that encountered here. * * * Inadequate, misleading or insufficient signs may be a direct basis for predicating liability on the part of the State. * * * It is now settled that under proper circumstances the State is under a duty to provide and maintain at dangerous places, sound and adequate barriers. * * * Taking all of the factors into consideration, we hold that they constituted a dangerous situation which the State should have reasonably anticipated and that the State failed in its duty to erect and maintain adequate signs and barriers. This failure placed decedent in a dangerous situation from which she was unable to extricate herself in time to avoid the fatal consequences which ensued and was the proximate cause of the accident."

In *McGuire* v. *Spence* (91 N. Y. 303) the court said (pp. 305–306): " He who approaches a railroad crossing approaches a place of danger, and he must look and listen, for he is bound to anticipate a possible harm. But one who passes along a side-

walk has a right to presume it to be safe. He is not called upon to anticipate danger, and is not negligent for not being on his guard. Whoever left this area in the sidewalk open and uncovered was guilty of a positive wrong. It amounted to an obstruction of the street. It was a trap set for the unwary, or for those hurried or inattentive. Nobody was bound to anticipate its existence, or to look for it, although it was visible. The plaintiff, therefore, was bound to no special care to avoid such an accident as happened, and the jury were justified on the facts in finding her free from negligence."

How much more here, where the defendant caused an area one-half acre in extent and as deep as eleven feet to be dredged and left it as a place of danger without warning to anyone using the bay for any purpose.

In *Lahr* v. *Tirrill* (274 N. Y. 112, 117) the Court of Appeals disapproved a verdict based upon guess, speculation and surmise. In the instant case the defendant, by guess, speculation and surmise, has sought to establish negligence arising from the fact that the deceased girl's leg was one-fourth inch shorter than the other and that she waded out for a considerable distance from the shore along with others and that it was claimed there were wind and waves on the bay. Said the Court of Appeals: " The whole question of negligence was left to guess, speculation and surmise. The cause of the skid was not shown; there was nothing to show that the skid occurred because of a defective condition of the car or because of its negligent operation. Under the facts here, there was no proof of negligence. The burden was on the plaintiffs to produce evidence of negligence; it could not be inferred from the fact that the car skidded or that the accident happened, nor could it be left to guess, speculation or surmise. * * * And if the evidence, such as there is, is capable of an interpretation equally consistent with the presence or absence of a wrongful act, that meaning must be ascribed which accords with its absence."

This court does not attempt to determine why the jury in this case brought in a verdict which was wholly unjust and incorrect. The verdict should be set aside and a new trial ordered.

But, the defendant urges that this court should not disturb the verdict and cites: *Berkman* v. *Friedman* (105 Misc. 350 [1918]); *McStay* v. *Erie R. R. Co.* (99 Misc. 673, affd. 184 App. Div. 927, motion for leave to appeal denied, 185 App. Div. 907) and *Tucker* v. *O'Brien* (117 N. Y. S. 1010).

The cases cited deal with situations involving a conflict of evidence. In each case there was evidence to support the verdict.

However, there is ample authority upholding the right of the trial court to set aside the verdict of the jury.

In *Parsons* v. *New York Subways Adv. Co.* (270 App. Div. 403–404) the court said: " We think that the verdict of the jury in favor of plaintiff was contrary to the weight of the credible evidence and that the court was warranted in setting the verdict aside. However, the trial court should not have directed a verdict for the defendant. There was no actual defect of proof in plaintiff's case nor can we say as a matter of law that plaintiff was not entitled to recover. ' Where the court, in the *exercise of its discretion,* sets aside a verdict of the jury because the court is of the opinion that in weighing the evidence the jury has not appraised correctly its relative persuasiveness and probative force, a new trial must follow.' "

In *Blum* v. *Fresh Grown Preserve Corp.* (292 N. Y. 241, 245) the court held: " Where the court, in the *exercise of its discretion,* sets aside a verdict of the jury because the court is of the opinion that in weighing the evidence the jury has not appraised correctly its relative persuasiveness and probative force, a new trial must follow. (*Imbrey* v. *Prudential Insurance Co.,* 286 N. Y. 434.) ' Where conflicting inferences may not unreasonably be drawn ' it cannot be said that solely a question of law is presented for decision by the court (*Matter of Case,* 214 N. Y. 199, 203) ; but an inference is ' unreasonably drawn ' unless supported by sufficient evidence. Thus, the question whether a verdict of a jury is ' unsupported by sufficient evidence ' is always one of law for the Trial Judge. He *must* set aside such a verdict and in an appropriate case he may then direct a contrary verdict. (*Getty* v. *Williams Silver Co.,* 221 N. Y. 34.) "

And in *Elpern* v. *Lasser* (139 Misc. 68) the court said: " But, where it is impossible to reconcile the verdict with a fair consideration of the evidence, a situation is presented which calls for the exercise by the trial judge of the power conferred upon him by section 549 of the Civil Practice Act." In that case the court set aside the verdict.

*Davidson* v. *Morse Dry Dock & Repair Co.* (222 App. Div. 815). In this case the Appellate Division, in the memorandum decision, said: " Order granting motion to set aside verdict unanimously affirmed, with costs. While we are of opinion that the trial justice erred in holding that plaintiff was negligent as matter of law, we nevertheless affirm the order, which is made upon all the grounds stated in section 549 of the Civil Practice Act, as a proper exercise of discretion."

In *Murphy* v. *Long Island R. R. Co.* (32 N. Y. S. 2d 345) Mr. Justice DALY of this court, set aside the verdict of the jury as contrary to the weight of the evidence and granted a new trial, and his order was affirmed (263 App. Div. 840). The appellate court said: " As the result of a collision at a grade crossing between an automobile owned by one of the plaintiffs and defendant's passenger train, plaintiffs seek to recover damages for personal injuries, for medical expenses and loss of services, and for property damage. Plaintiffs appeal from an order setting aside verdicts in their favor and granting a new trial. Order unanimously affirmed, with costs."

In *Wulkan* v. *Kapp* (264 App. Div. 743) the Appellate Division of this department unanimously affirmed an order made by the trial court setting aside a verdict in favor of the plaintiff.

In *Horowitz* v. *Bandler* (265 App. Div. 1066) the Appellate Division of the Second Department, affirmed an order made by Mr. Justice STODDART of this court at trial term, setting aside a verdict and granting a new trial because " the preponderance of the evidence does not establish the fall sustained by the deceased as the cause of death."

In *Gruhn* v. *Taylor Constr. Co.* (180 Misc. 956) Mr. Justice EDER, at trial term, set aside a verdict with the comment: " The jury cannot be arbitrary or capricious and, when a jury refuses upon undisputed facts to return a proper verdict, it is a firmly imbedded rule that it becomes the duty of the court to set it aside and order a new trial, and ' a verdict may properly be said to be capricious if it is against the overwhelming weight of the evidence ' * * *; and a verdict is arbitrary when the jury's finding is without any supporting evidence." (P. 959.) This determination was affirmed (266 App. Div. 954).

The motion is granted. The verdict of the jury is set aside and a new trial ordered.

Settle order on notice.