Annunziata v City of New York (2019 NY Slip Op 06055)





Annunziata v City of New York


2019 NY Slip Op 06055


Decided on August 7, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 7, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
FRANCESCA E. CONNOLLY
VALERIE BRATHWAITE NELSON, JJ.


2016-04150
 (Index No. 4927/10)

[*1]Michael Annunziata, appellant, 
v
City of New York, respondent, et al., defendant.


Sullivan Papain Block McGrath & Cannavo P.C., New York, NY (Stephen C. Glasser and Gabriel A. Arce-Yee of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York, NY (Deborah E. Brenner and Jonathan A. Popolow of counsel), for respondent.



DECISION & ORDER
In an action to recover damages for personal injuries, the plaintiff appeals from an order of the Supreme Court, Kings County (Wavny Toussaint, J.), dated February 19, 2016. The order, insofar as appealed from, denied those branches of the plaintiff's motion which were pursuant to CPLR 4404(a) to set aside a jury verdict in favor of the defendant City of New York and against the plaintiff on the issue of liability on the causes of action alleging violations of sections 27-127 and 27-128 of the Administrative Code of the City of New York, and the cause of action alleging a violation of Labor Law § 27-a, and for a new trial on the issue of liability with respect to those causes of action. Justice Brathwaite Nelson has been substituted for former Justice Sgroi (see 22 NYCRR 1250.1[b]).
ORDERED that the order is modified, on the facts and in the exercise of discretion, by deleting the provisions thereof denying those branches of the plaintiff's motion which were pursuant to CPLR 4404(a) to set aside the jury verdict in favor of the defendant City of New York and against the plaintiff on the issue of liability on the causes of action alleging violations of sections 27-127 and 27-128 of the Administrative Code of City of New York and for a new trial on the issue of liability with respect to those causes of action, and substituting therefor provisions granting those
branches of the plaintiff's motion; as so modified, the order is affirmed insofar as appealed from, with costs to the plaintiff, and the matter is remitted to the Supreme Court, Kings County, for a new trial on the issue of liability with respect to the causes of action alleging violations of sections 27-127 and 27-128 of the Administrative Code of the City of New York and, if warranted, a trial on the issue of damages.
The plaintiff commenced this action against the defendant City of New York and another defendant to recover damages for personal injuries allegedly sustained when he tripped and fell on a piece of torn carpeting in the offices of the New York City Fire Department, while he was performing his assigned duties as a firefighter. The plaintiff asserted causes of action under General Municipal Law § 205-a, predicated upon violations of (1) sections 27-127 and 27-128 of the Administrative Code of the City of New York (now, respectively, section 301.1 of the New York [*2]City Building Code [Administrative Code of City of NY, tit 28, ch 7] and section 107.5 of the New York City Fire Code [Administrative Code of City of NY, tit 29, ch 1]), and (2) section 27-a of the Labor Law.
After a trial, the jury determined that the City violated sections 27-127 and 27-128 of the Administrative Code, but that such violations did not directly or indirectly cause the plaintiff's accident. The jury further determined that the City did not violate Labor Law § 27-a.
The plaintiff subsequently moved pursuant to CPLR 4404(a), among other things, to set aside the jury verdict on the issue of liability and for a new trial. In an order dated February 19, 2016, the Supreme Court denied the plaintiff's motion. The plaintiff appeals from portions of that order. We modify.
"The power . . . to set aside a jury verdict pursuant to CPLR 4404(a) is a broad one intended to ensure that justice is done" (Provenzano v Peters, 242 AD2d 266, 266). As relevant here, CPLR 4404 provides that, "[a]fter a trial of a cause of action or issue triable of right by a jury, upon the motion of any party or on its own initiative, the court . . . may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence [or] in the interest of justice" (CPLR 4404[a]). A determination made pursuant to these statutory provisions "is essentially a discretionary and factual determination which is to be distinguished from the question of whether a jury verdict, as a matter of law, is supported by sufficient evidence" (Nicastro v Park, 113 AD2d 129, 132).
A motion for judgment as a matter of law is a legal determination, akin to a motion for summary judgment pursuant to CPLR 3212, or a motion for a directed verdict pursuant to CPLR 4401 (see Siegel & Connors, NY Prac § 405 at 784 [6th ed 2018]). "For a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence . . . [i]t is necessary to . . . conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men [or women] to the conclusion reached by the jury on the basis of the evidence presented at trial" (Cohen v Hallmark Cards, 45 NY2d 493, 499). "The test is a harsh one because a finding that a jury verdict is not supported by sufficient evidence leads to a directed verdict terminating the action without resubmission of the case to a jury" (Nicastro v Park, 113 AD2d at 132).
By contrast, the criteria for setting aside a jury verdict as contrary to the weight of the evidence are "necessarily less stringent, for such a determination results only in a new trial" (id. at 132-133). In exercising its authority to review the weight of the evidence underlying a verdict, "the Appellate Division has the power to determine whether a particular factual question was correctly resolved by the trier of facts" (Cohen v Hallmark Cards, 45 NY2d at 498). "[T]he question of weight of the evidence is, in a sense, focused on whether it is more reasonable, on the basis of the evidence, to reach one of the possible conclusions rather than the other" legally permissible conclusions (Arthur Karger, Powers of the New York Court of Appeals § 13:2 at 453 [3d ed rev 2005]; see generally Siegel & Connors, NY Prac § 406 at 786-787 [6th ed 2018]; 8-4404 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 4404.06 [online treatise]). "[T]he mere fact that some testimony in the record has created a factual issue does not deprive the [court] of the power to intervene in an appropriate case" (Nicastro v Park, 113 AD2d at 135; see Siegel & Connors, NY Prac § 406 at 786-787 [6th ed 2018]).
"Whether a particular factual determination is against the weight of the evidence is itself a factual question" (Cohen v Hallmark Cards, 45 NY2d at 498), which "requires a discretionary balancing of many factors" (Nicastro v Park, 113 AD2d at 133). These factors include, inter alia, "an application of that professional judgment gleaned from the Judge's background and experience as a student, practitioner and Judge" (id. at 135).
However, "[t]he fact that determination of a motion to set aside a verdict involves judicial discretion does not imply . . . that the . . . court can freely interfere with any verdict . . . with [*3]which it disagrees" (id. at 133). "A jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence" (Ahmed v Port Auth. of N.Y. & N.J., 131 AD3d 493, 495; see Lolik v Big V Supermarkets, 86 NY2d 744, 746).
This Court has clarified that this standard—by any fair interpretation of the evidence—"simply restates the guiding principle that in reviewing the whole trial to ascertain whether the conclusion was a fair reflection of the evidence, great deference must be given to the fact-finding function of the jury," which had the opportunity to see and hear the witnesses (Nicastro v Park, 113 AD2d at 136). While great deference must be accorded to the jury's fact-finding function, a court's discretion to set aside the verdict "is at its broadest when it appears that the unsuccessful litigant's evidentiary position was particularly strong compared to that of the victor" (id.; see Pire v Otero, 123 AD2d 611, 611; Barbieri v Vokoun, 72 AD3d 853, 855; Panariello v Ballinger, 248 AD2d 452, 452).
"If the original fact determination was made by a jury . . . and the Appellate Division concludes that the jury has made erroneous factual findings, the [C]ourt is required to order a new trial" (Cohen v Hallmark Cards, 45 NY2d at 498). Furthermore, a court should not, in the exercise of its discretion, permit a verdict to stand if the jury "has clearly acted mistakenly or capriciously and arbitrarily," or if "the verdict is tainted with prejudice, passion or corruption" (8-4404 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 4404.09 [online treatise]; see Szabo v Super Operating Corp., 51 AD2d 466, 471; Gruhn v Taylor Constr. Co., Inc., 266 App Div 954, affg 180 Misc 956, 960 [Sup Ct, NY County]; see also 2 Warren's Negligence in the New York Courts § 247.04).
General Municipal Law § 205-a "establishes the right of an injured firefighter to recover against any party whose neglect or omission to comply with governmental requirements results directly or indirectly in the firefighter's injury" (Terranova v New York City Tr. Auth., 49 AD3d 10, 17). "[A] plaintiff seeking recovery under General Municipal Law § 205-a must identify the statute or ordinance with which the defendant failed to comply, describe the manner in which the firefighter was injured, and set forth those facts from which it may be inferred that the defendant's negligence directly or indirectly caused the harm to the firefighter" (Zanghi v Niagara Frontier Transp. Commn., 85 NY2d 423, 441).
"Section 205-a's causation element is clear on its face: it gives a firefighter . . . a right of action against any person whose negligent failure to comply with a government provision either directly or indirectly' results in injury or death" (Giuffrida v Citibank Corp., 100 NY2d 72, 80 [emphasis omitted]). "The only reasonable conclusion that can be drawn from inclusion of the word indirectly' in the statute is that the Legislature intended to broaden a firefighter's cause of action under section 205-a to encompass situations where the alleged violation was not the direct' cause of the injuries" (id. at 80).
Accordingly, to make out a claim under General Municipal Law § 205-a, a plaintiff is not required to show the same degree of proximate cause as is required in a common-law negligence action (see Giuffrida v Citibank Corp., 100 NY2d at 81). "Rather, the substantial case law that has developed on the subject holds that a plaintiff need only establish a practical or reasonable connection' between the statutory or regulatory violation and the claimed injury" (id.; see Mullen v Zoebe, Inc., 86 NY2d 135, 140; Zanghi v Niagara Frontier Transp. Commn., 85 NY2d at 441).
In this case, the plaintiff testified at trial that on the morning of March 20, 2009, he was in his cubicle when one of his superiors summoned him to his office. The plaintiff testified that he "got up from [his] cubicle" and "took a couple of steps forward and [he] tripped on a piece of torn carpet." Photographs of the tear in the carpet were admitted into evidence, and the plaintiff identified the "piece of torn carpet where [he] tripped on."
Although there were no other individuals present when the plaintiff fell, his [*4]supervisor immediately responded to "the loud bang" that resulted from the accident. The plaintiff's supervisor prepared a report that morning, which stated that the plaintiff had tripped on a piece of loose rug. Another one of the plaintiff's supervisors testified that he responded to the location of the accident and observed "a ripped carpet there." Photographs of the tear in the carpet that caused the plaintiff to fall were admitted into evidence and identified by the plaintiff's witnesses.
The director of support services for the building where the accident occurred testified that, prior to March 2009, he was aware of the presence of tears in the carpeting, and that he was aware that these conditions had previously caused people to fall down. These tears existed on the fourth floor of the building, where the plaintiff's cubicle was located. The director of support services stated that the tears in the carpeting were often fixed with duct tape so that they would not cause people to fall.
The plaintiff testified that at the time of the accident, he felt a "popping in [his] leg." A doctor who examined the plaintiff after the accident, Leonard Harrison, testified that the plaintiff tore his hamstring as the result of the subject accident.
The City did not present any evidence to show that the plaintiff's accident was caused by something other than the tear in the carpet, or that the accident did not occur at all. Although the jury was not required, as a matter of law, to credit the plaintiff's uncontradicted testimony (see Arthur Karger, Powers of the New York Court of Appeals § 13:2 at 453 [3d ed rev 2005]), the City's efforts to impeach the plaintiff as to the cause of the accident were particularly weak. The City's counsel, on cross-examination, repeatedly attempted to elicit testimony from the plaintiff that the plaintiff "assumed" the carpet caused his fall, effectively asking the same question three times. The plaintiff responded twice by stating that he tripped over the carpet. After being asked a third time, he stated: "I assumed that, yes."
The City spent considerably more time questioning the plaintiff about his criminal history in an effort to impeach his general credibility and character, eliciting inflammatory details underlying the plaintiff's prior conviction for endangering the welfare of a child, namely, that he had allowed a 16-year-old child to place her hand on his penis for the purpose of his own sexual gratification. On redirect examination, the plaintiff's attorney attempted to rehabilitate his client by asking him additional questions in order to clarify the circumstances surrounding that crime and to dispel the unsupported allusions left by the City's questioning.
Despite the City's attacks, the plaintiff's testimony as to the cause of the accident was consistent throughout the course of the trial. Moreover, his testimony regarding the cause of the accident was consistent with the testimony he gave at his deposition, in which he repeatedly testified that "[his] foot got caught on a piece of torn rug, where [he] los[t] [his] balance and tripped." The plaintiff's trial testimony was also consistent with the reports he gave to his supervisor and to doctors shortly after the accident occurred.
On this record, any conclusion that the plaintiff's accident was the result of some other unidentified cause, or that the entire incident was fabricated, could only be based upon mere speculation (see Canale v L & M Assoc. of N.Y., Inc., 155 AD3d 675, 677; cf. Casella v City of New York, 69 AD3d 549, 549-550). The lack of evidentiary support for such conclusions is reflected by the fact that the City did not even make these arguments to the jury. Indeed, the City's arguments at trial were, first, that the City was not negligent in failing to repair a new, small tear in the carpeting of which it had no notice, and, second, that the plaintiff's injuries were not serious such that he made a good recovery. In making these arguments, the City's counsel stated during opening arguments that "th[e] particular piece of carpet where the plaintiff had his accident, the City did not know about that tear, did not know about that defect such that it could have fixed it," that "the plaintiff's own foot made the tear even worse," that "there is no evidence as to how long that particular defect, where the plaintiff tripped, existed," and that "the City did not know that, that particular defect that caused the plaintiff's accident existed, [and] did not have notice of it." Similarly, in closing arguments, the City's counsel stated that "the defect could have existed for minutes, seconds before" [*5]the plaintiff's accident, and that "it's clear that he did not know when that defect that he fell on came into existence." Counsel also stated that "it's just as likely that the defect maybe wasn't that bad" and "the area was reasonably safe," and when the plaintiff's foot got caught and "he trips over, he makes something that wasn't that bad look really bad."
In sum, it cannot be said that the weight of the evidence supports the conclusion that the plaintiff's accident was the result of some other unidentified cause. Nor does the weight of the evidence establish that the accident did not occur at all. Moreover, "the mere fact that some testimony in the record has created a factual issue does not deprive the [court] of the power to intervene in an appropriate case" (Nicastro v Park, 113 AD2d at 135). As one leading treatise has stated: "A lawyer inexperienced in trial practice may . . . be surprised to learn that the weighing of the evidence is left entirely to the court's discretion and that this discretion may be exercised to set aside the verdict even where the evidence may be technically sufficient to sustain it" (Siegel & Connors, NY Prac § 406 at 786 [6th ed 2018] [emphasis added]).
Under the circumstances of this case, for the jury to find that the City violated Administrative Code §§ 27-127 and 27-128, yet to find that such violations did not directly or indirectly cause the plaintiff's accident, was unsupported by a fair interpretation of the evidence (see Wallace v City of New York, 108 AD3d 760, 761-762; Dellamonica v Carvel Corp., 1 AD3d 311, 312). Accordingly, the Supreme Court should have granted those branches of the plaintiff's motion which were pursuant to CPLR 4404(a) to set aside the jury verdict in favor of the City and against the plaintiff on the issue of liability on the causes of action alleging violations of Administrative Code §§ 27-127 and 27-128, and for a new trial on the issue of liability with respect to those causes of action.
The City's contention that this Court's determination in Casella v City of New York (69 AD3d 549) is "squarely controlling here" is without merit and does not require extended discussion. Initially, it is difficult to conceive how this Court could be constrained, as a matter of law, to exercise its discretion in a particular manner in this case, given the factual and discretionary nature of the species of motion under review. In any event, a review of the facts and circumstances involved in Casella, as set forth in this Court's decision and order, reveals that the facts of that case are distinguishable from those present here. Among other differences, the plaintiff in that case had failed, at her deposition, to identify the dangerous condition that allegedly caused her to fall, testifying, in contradiction to her trial testimony, that she had simply "lost her balance and fell" (id. at 550).
Finally, contrary to the plaintiff's contention, a fair interpretation of the evidence supports a finding that the torn carpeting was not a hazard "likely to cause death or serious physical harm" (Labor Law § 27-a[3][a][1]). Since the portion of the jury verdict finding that the City did not violate Labor Law § 27-a was not contrary the weight of the evidence, the plaintiff is not entitled to a new trial on the cause of action predicated upon a violation of Labor Law § 27-a.
In light of the foregoing, we remit the matter to the Supreme Court, Kings County, for a new trial on the issue of liability with respect to the causes of action alleging violations of Administrative Code §§ 27-127 and 27-128 and, if warranted, a trial on the issue of damages.
BALKIN, J.P., AUSTIN and MILLER, JJ., concur.
CONNOLLY, J., concurs in part, and dissents in part, and votes to affirm the order insofar as appealed from, with the following memorandum, in which BRATHWAITE NELSON, J., concurs:
I respectfully disagree with the determination of my colleagues in the majority that the verdict in favor of the defendant City of New York with respect to the causes of action pursuant to Administrative Code of the City of New York §§ 27-127 and 27-128 was contrary to the weight of the evidence.
The plaintiff commenced this action to recover damages for personal injuries he allegedly sustained by tripping on a torn piece of carpet in the offices of the New York City Fire Department. The plaintiff sought to impose liability, inter alia, pursuant to General Municipal Law § 205-e, alleging that the defendant violated, inter alia, New York City Building Code (Administrative Code of City of NY, tit 28, ch 7) § BC 301.1 (former Administrative Code § 27-127), which provides that a building "shall be maintained in a safe condition," and New York City Fire Code (Administrative Code of City of NY, tit 29, ch 1) § FC 107.5 (former Administrative Code § 27-128), which provides that an owner "shall be responsible at all times for the safe maintenance of a building."
The action proceeded to a unified trial on the issues of both liability and damages. The plaintiff, a New York City firefighter, was the sole witness to the alleged accident. He testified that he tripped and fell on frayed and torn carpeting, and heard a "pop" in the area of his left hamstring. The plaintiff offered into evidence, inter alia, photographs depicting a torn and frayed carpet.
During cross-examination of the plaintiff, defense counsel attacked the certainty of the plaintiff's testimony that he tripped on the torn carpet, eliciting testimony from the plaintiff that he "assumed" that it was the torn carpet that had caused his fall. On the day of the accident, March 20, 2009, which was a Friday, the plaintiff required no immediate medical treatment and drove himself home from the office, a 40-minute drive from Brooklyn to West Babylon. The plaintiff sought no medical treatment for the entire weekend. He drove himself to work on Monday, March 23, 2009, and he worked for several hours before he asked to be taken to the hospital by ambulance for complaints of pain to his left leg. At the hospital, the plaintiff was prescribed Flexeril for muscle spasms and Motrin for pain, and was discharged. Thereafter, he received minimal treatment, consisting of physical therapy. The plaintiff missed an unspecified number of days from work, "scattered" over a "few" weeks. He made no claim for lost wages. After the injury, and after the plaintiff no longer worked for the fire department, he was employed doing other types of physical labor, including driving a tow truck to repossess cars, doing carpentry work, and working as an electrician.
The plaintiff was evasive when questioned regarding a preexisting left hamstring injury that occurred approximately two years before the subject accident. For instance, when asked about the prior injury, he could not recall what part of his leg had been injured, despite having testified at his deposition that he injured his left hamstring. The plaintiff testified at trial that he could not remember whether he had missed work after the prior injury, in contrast to his deposition where he testified that he missed "a few weeks." He further testified he was "not a hundred percent sure" he had attended physical therapy after the prior injury, despite having testified at his deposition that he attended physical therapy two or three times per week.
Further, defense counsel sought to impeach the plaintiff's character for truthfulness by eliciting that the plaintiff had previously been convicted of a crime wherein he pleaded guilty to engaging in sexual contact with a child.
The jury returned a verdict, inter alia, finding that the defendant violated Administrative Code §§ 27-127 and 27-128, but that such violations were not a cause of the plaintiff's accident. In denying the plaintiff's motion pursuant to CPLR 4404(a), the Supreme Court held that the jury could have found that the plaintiff was not a credible witness in light of, inter alia, inconsistencies in his testimony as to how the accident occurred and his criminal history, which impeached his credibility. The court also found that the jury could even have rejected the plaintiff's testimony that the accident occurred at all.
A verdict should not be set aside as contrary to the weight of the evidence unless the evidence so preponderated in favor of the plaintiff that the verdict could not have been reached on any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746). Contrary to the plaintiff's contention, a "fair interpretation" of the evidence at trial was that the [*6]carpet in the subject location was in fact torn, but that the torn carpet did not cause the plaintiff to fall, or that the plaintiff simply did not trip and fall at all. It is not unreasonable, in a case involving an otherwise unwitnessed accident, for the jury to have found that the plaintiff lacked credibility and reject his testimony as to how the alleged accident occurred (see Casella v City of New York, 69 AD3d 549, 549-550). Such an interpretation of the evidence would be consistent with the jury's verdict answering "Yes" to the questions asking whether the defendant violated Administrative Code §§ 27-127 and 27-128, but answering "No" to the questions asking whether such violations caused the plaintiff's accident. Alternatively, the jury could have concluded that, even if the accident did occur, the plaintiff's injuries were preexisting and, thus, were not causally related to the accident.
Further, contrary to the plaintiff's contention, the issues of negligence and proximate cause were not "so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause" (Garrett v Manaser, 8 AD3d 616, 617). The fact that the carpet was torn was established by photographic evidence and other testimony, but whether the accident occurred at all hinged on the plaintiff's testimony, which the jury was free to reject, as it clearly did in this case. Thus, it was not logically impossible for the jury to find that the carpet violated the regulatory standard of care but reject the plaintiff's claim that the carpet caused him to fall.
Moreover, the plaintiff's contention that the City "conceded throughout the whole trial that . . . the plaintiff tripped on the torn carpet" is utterly belied by the record. In his opening statement, defense counsel argued that the plaintiff would not be able to establish whether he tripped over the carpet or "tripped over his own two feet." In closing, defense counsel argued: "[E]ven if you may find that the City [violated Administrative Code §§ 27-127 and 27-128], it did not directly or indirectly cause the plaintiff's accident." In any event, nothing defense counsel said or did during the trial relieved the plaintiff of the burden to prove each and every element of his case.
This case is remarkably similar to Casella v City of New York (69 AD3d 549), where the plaintiff, a New York City police officer, allegedly fell on a metal grate in the driveway of her precinct station house. The plaintiff sued the City, asserting a cause of action pursuant to General Municipal Law § 205-e, which was predicated on alleged violations of Administrative Code §§ 27-127 and 27-128. At trial, the plaintiff testified that her foot became caught between the metal grate and the surrounding cement, causing her to lose her balance and fall, which testimony was seemingly inconsistent with her testimony at a hearing pursuant to General Municipal Law § 50-h that, as she stepped down onto the metal grate, she lost her balance and fell (see Casella v City of New York, 69 AD3d at 549-550). The jury returned a verdict finding that the City was negligent, but that such negligence was not a proximate cause of the accident (see id. at 550). The Supreme Court denied the plaintiff's motion to set aside the jury verdict as contrary to the weight of the evidence. This Court affirmed, holding: "Under the circumstances, the issues of negligence and causation were not inextricably interwoven, and the jury's determination that the defendant's failure to maintain the metal grate in a safe condition was not a cause of the accident was not contrary the weight of the evidence" (id. at 551). In my view, the case at bar is not distinguishable from Casella in that both cases turn on the plaintiff's credibility as a witness and, therefore, we should reach the same result and uphold the jury's verdict.
I agree with my colleagues in the majority regarding the plaintiff's Labor Law § 27-a cause of action.
Since I find that the verdict was supported by a fair interpretation of the evidence, I would not grant those branches of the plaintiff's motion which were pursuant to CPLR 4404(a) to set aside the jury verdict in favor of the City and against the plaintiff on the issue of liability on the causes of action alleging violations of Administrative Code §§ 27-127 and 27-128 and for a new trial on the issue of liability with respect to those causes of action. I, therefore, vote to affirm the order insofar as appealed from.
ENTER:
Aprilanne Agostino
Clerk of the Court