*75
 
 OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Plaintiff, a former firefighter, brought this personal injury action pursuant to General Municipal Law § 205-a to recover damages for injuries he sustained while fighting a fire at defendant’s property. The lower courts granted defendant’s motion for summary judgment. On this appeal we consider whether the Appellate Division properly applied General Municipal Law § 205-a when it held that plaintiff failed to show a reasonable or practical connection between defendant’s code violations and plaintiff’s injuries. Because we conclude that plaintiff made the necessary showing, we reverse the order of the Appellate Division and reinstate the complaint against defendant.
 
 [1]
 

 I.
 

 While serving as a member of the New York City Fire Department, plaintiff responded to a fire at a doughnut shop in a building owned in trust by defendant Citibank Corp. As plaintiff was battling the blaze, the alarm on his air supply equipment sounded, signaling that he had only six minutes of oxygen left. He notified his lieutenant, who directed him to leave the building along with his fellow firefighters. They too had been ordered to evacuate, owing to the intensity of the fire. During the evacuation, plaintiff operated the last water hose, thereby enabling his fellow firefighters to escape the burning building. As plaintiff finally turned to leave, his oxygen supply ran out and he was overcome by smoke, suffering severe burns and smoke inhalation.
 

 Plaintiff commenced this action against Citibank and others pursuant to General Municipal Law § 205-a. That statute creates a cause of action for firefighters who suffer line-of-duty injuries directly or indirectly caused by a defendant’s violation of relevant statutes and regulations. In his complaint, plaintiff alleged that the fire was caused by an accumulation of grease in the ventilation system of the doughnut shop’s kitchen, and
 
 *76
 
 that defendant violated certain regulations requiring it to keep the building in a safe condition and to maintain a proper fire protection system. Defendant moved for summary judgment, arguing that plaintiff had failed to show that the alleged violations were the proximate cause of his injuries. Supreme Court granted the motion, concluding that there were no triable issues of fact.
 

 The Appellate Division affirmed, holding that plaintiff failed to raise a question of fact in response to defendant’s showing that there was no “reasonable or practical” connection between the alleged violations and plaintiff’s injuries. (288 AD2d 433, 434 [2001].) The Court held that “[e]ven assuming that [defendant] failed to maintain a properly-functioning fire protection system and that such failure permitted the fire to ignite or spread, the uncontroverted evidence in the record established that the plaintiffs injuries resulted from the depletion of his air supply, which caused him to be overcome by smoke”
 
 (id.).
 
 We now reverse.
 

 II.
 

 Traditionally, New York courts have followed the “firefighter’s rule,” which bars recovery in negligence for injuries sustained by a firefighter in the line of duty
 
 (see Santangelo v State of New York,
 
 71 NY2d 393, 397 [1988]). The rule, which has its origins in the common law
 
 (see Gibson v Leonard,
 
 143 111 182, 32 NE 182 [1892]) was initially premised on the idea that firefighters were licensees who took the property as they found it
 
 (see
 
 143 111 at 189-190, 32 NE at 183-184;
 
 see also
 
 Prosser and Keeton, Torts § 61, at 429 [5th ed]). Another rationale used in support of the rule was that firefighters assumed the risk of injuries that go with the job
 
 (see McGee v Adams Paper & Twine Co.,
 
 26 AD2d 186, 190 [1st Dept 1966],
 
 affd
 
 20 NY2d 921 [1967];
 
 Krauth v Geller,
 
 31 NJ 270, 157 A2d 129 [I960]). More recently, courts have justified the rule on the ground that firefighters are well-trained professionals hired specifically to confront dangerous situations often caused by someone’s negligence. As the Court stated in
 
 Santangelo,
 
 “as a matter of public policy firefighters trained and compensated to confront such dangers must be precluded from recovering damages for the very situations that create a need for their services” (71 NY2d at 397).
 

 Over the last several decades, the legislative response has been clear, consistent and undoubtedly in the direction of do
 
 *77
 
 ing away with the firefighter’s rule. The first legislative action in this area of the law occurred in 1935, when the Legislature sought to ameliorate the harsh effects of the firefighter’s rule by enacting General Municipal Law § 205-a
 
 (see
 
 L 1935, ch 800, § 2). That provision, in relevant part unchanged to this day, creates a cause of action for firefighters who, while in the line of duty, are injured as a result of violations of statutes or regulations. Specifically, it provides that firefighters or representatives of deceased firefighters have a right of action in situations where the “negligence of any person * * * in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state * * * or [local] governments” “directly or indirectly” causes the firefighter’s injury or death during the discharge of his or her duties (General Municipal Law § 205-a [1]).
 

 As its name suggests, early case law limited the firefighter’s rule to firefighters. In 1988, this Court extended the rule to police officers, holding that the same policy considerations that barred firefighters from recovery for on-the-job injuries applied with equal force to police officers
 
 (see Santangelo,
 
 71 NY2d at 397-398). Ever since
 
 Santangelo,
 
 the Legislature’s response to the firefighter’s rule has included both firefighters and police officers, and can only be understood by considering the enactments comprehensively.
 

 In 1989, the Legislature enacted General Municipal Law § 205-e as a direct response to
 
 Santangelo (see
 
 L 1989, ch 346; Letter from Sponsor, Bill Jacket, L 1989, ch 346, at 6). The statute conferred on police officers the same benefits that section 205-a offered firefighters, namely, a cause of action for line-of-duty injuries caused by statutory or regulatory violations
 
 (see
 
 Mem in Support, Bill Jacket, L 1989, ch 346, at 5; Mem of State Exec Dept, 1989 McKinney’s Session Laws of NY, at 2140).
 

 Three years later the Legislature acted once again, this time in response to court decisions that restricted a police officer’s cause of action under General Municipal Law § 205-e to situations where the officer’s injuries resulted from “violations pertaining to the safe maintenance and control of premises” (L 1992, ch 474, § 1;
 
 see Sciarrotta v Valenzuela,
 
 182 AD2d 443, 445 [1st Dept 1992];
 
 Cooper v City of New York,
 
 182 AD2d 350, 351 [1st Dept 1992],
 
 affd
 
 81 NY2d 584 [1993]). Because police officers’ duties — and the dangers they face — are not limited to
 
 *78
 
 protecting “premises,” the Legislature made clear that the right of action under General Municipal Law § 205-e exists “regardless of where the violation causing injury or death occurs” (L 1992, ch 474, § 1). The practical effect of the 1992 legislation was to give police officers a broader cause of action than that available to firefighters, as the legislative enactments following
 
 Santangelo
 
 for the most part dealt with police officers.
 
 [2]
 

 Recognizing this disparate treatment and responding to more recent court decisions that purportedly interpreted General Municipal Law §§ 205-a and 205-e too narrowly, the Legislature acted once again in 1996
 
 (see
 
 L 1996, ch 703). This legislation, which was meant to “resolve, once and for all, confusion regarding the scope” of the statutory remedies offered to police officers and firefighters (Introducer’s Mem in Support, Bill Jacket, L 1996, ch 703, at 8), generally accomplished three things.
 

 First, it extended to firefighters the same protection police officers enjoyed under the 1992 law by amending General Municipal Law § 205-a to ensure that “[a]ny tortfeasor who violates a statute, rule or ordinance and injures the firefighter, whether he is at a premises or at a toxic waste fire or while responding to a call, will be liable” (Introducer’s Mem in Support, Bill Jacket, L 1996, ch 703, at 9). The amendment also made clear that firefighters can sue regardless of whether the alleged violation at issue is of a provision which codifies a common-law duty or prohibits activities that increase the dangers inherent in a firefighter’s job
 
 (see
 
 L 1996, ch 703, § 4).
 

 Second, besides amending General Municipal Law § 205-e to reflect the same protections newly accorded to firefighters
 
 (see
 
 L 1996, ch 703, § 2), the Legislature gave police officers a right of action regardless of whether the alleged violator actually owned or controlled the premises where the violation occurred
 
 (see id.,
 
 § 3).
 

 Third, the lawmakers enacted General Obligations Law § 11-106, which largely abolishes the firefighter’s rule by giving firefighters and police officers a cause of action in negligence for injuries suffered while in the line of duty (except as to actions against municipal employers and fellow workers)
 
 (see
 
 L 1996, ch 703, § 5).
 

 
 *79
 
 The 1996 amendments have been the last substantial ones to date.
 
 [3]
 
 As the statutory and legislative history make abundantly clear, General Municipal Law § 205-a, as amended, is the culmination of years of legislative efforts generally designed to accomplish two main objectives: mitigate the harshness of the firefighter’s rule by creating a cause of action where none previously existed, and encourage compliance with relevant statutes and ordinances by exposing violators to liability for injuries resulting directly or indirectly from noncompliance.
 

 III.
 

 With this legislative history in mind, we turn now to the central issue on this appeal: Whether the Appellate Division correctly ruled that plaintiff’s injuries were not caused by any alleged code violations, but rather by his running out of air. Our task is to decide whether plaintiff raised a triable issue of fact as to whether defendant’s violation of the code provisions directly or indirectly caused plaintiff’s injuries.
 

 To make out a valid claim under General Municipal Law § 205-a and survive a motion to dismiss, a plaintiff must “[1] identify the statute or ordinance with which the defendant failed to comply, [2] describe the manner in which the firefighter was injured, and [3] set forth those facts from which it may be inferred that the defendant’s negligence directly or indirectly caused the harm to the firefighter”
 
 (Zanghi v Niagara Frontier Transp. Commn.,
 
 85 NY2d 423, 441 [1995]). Defendant concedes the first prong of this test
 
 [4]
 
 and no dispute ex
 
 *80
 
 ists as to the manner in which plaintiff was injured.
 
 [5]
 
 Therefore, our review is limited to whether plaintiff raised a triable issue of fact as to causation.
 

 Section 205-a’s causation element is clear on its face: it gives a firefighter (or a deceased firefighter’s representative) a right of action against any person whose negligent failure to comply with a government provision either “directly or indirectly” results in injury or death. The only reasonable conclusion that can be drawn from inclusion of the word “indirectly” in the statute is that the Legislature intended to broaden a firefighter’s cause of action under section 205-a to encompass situations where the alleged violation was not the “direct” cause of the injuries.
 

 Although the term has at times led to some confusion
 
 (see generally
 
 Prosser and Keeton, Torts §§ 41-45 [5th ed]) “direct cause” or “proximate cause” (as it is sometimes called) has traditionally been understood to mean “[a] cause that directly produces an event and without which the event would not have occurred” (Black’s Law Dictionary 213 [7th ed 1999];
 
 see also Laidlaw v Sage,
 
 158 NY 73, 98-101 [1899]). An example used by one leading treatise is of the defendant who stabs the victim with a knife, and the bacteria on the knife enter the wound, resulting in infection, disease and ultimately death. The stabbing can properly be said to be the “direct cause” of the victim’s death
 
 (see
 
 Prosser and Keeton, Torts § 43, at 294,
 
 supra).
 
 In contrast, “indirect causation” involves a somewhat less than direct and unimpeded sequence of events resulting in injury. Whereas “direct causation” requires that the defendant’s conduct be a substantial causative factor
 
 (see Nallan v Helmsley-Spear, Inc., 50
 
 NY2d 507, 520 [1980]), an “indirect cause” is simply a factor that — though not a primary cause— plays a part in producing the result.
 

 In addressing General Municipal Law § 205-a claims, courts have frequently recognized this critical distinction between direct and indirect causation and, in light of the clear legislative intent to offer firefighters greater protections, have accorded the causation element of the statute a broad application
 
 (see e.g. Tobin v City of New York,
 
 256 AD2d 177 [1st Dept 1998];
 
 O’Connell v Kavanagh,
 
 231 AD2d 29 [1st Dept 1997]).
 
 *81
 
 Indeed, the Appellate Division recognized that to make out a claim under section 205-a, a “plaintiff is not required to show the same degree of proximate cause as is required in a common-law negligence action” (288 AD2d at 434). Rather, the substantial case law that has developed on the subject holds that a plaintiff need only establish a “practical or reasonable connection” between the statutory or regulatory violation and the claimed injury
 
 (see Mullen v Zoebe, Inc.,
 
 86 NY2d 135, 140 [1995];
 
 Zanghi,
 
 85 NY2d at 441).
 

 This case comes to us in the summary judgment context. A party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, producing sufficient evidence to demonstrate the absence of any material issue of fact. Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution
 
 (see Alvarez v Prospect Hosp.,
 
 68 NY2d 320, 324 [1986]).
 

 Here, in moving for summary judgment, defendant argued that “the proximate cause of the plaintiff’s alleged injuries [was] the fact that he ran out of oxygen. Accordingly, had he evacuated the premises prior to running out of oxygen he would not have suffered the alleged injuries.” In response, plaintiff argued that the fire suppression system in the doughnut shop did not activate properly so as to prevent or extinguish the fire that ultimately led to his injuries. Plaintiff alleged that his injuries were caused by the intense smoke, which was exacerbated, if not produced, by defendant’s failure to have a legal and operating fire suppression system.
 

 In support of the necessary causal relationship between defendant’s code violations and his injuries, plaintiff cited code provisions that generally require that buildings be kept in a safe condition, that the owner be responsible for the maintenance of the building and its facilities, and that the building’s fire extinguishing system be inspected, tested and serviced every six months
 
 (see generally
 
 n 4,
 
 supra
 
 at 79). Further, plaintiff submitted documentation that the New York City Fire Department had twice cited the doughnut shop for violations that were not cured before the fire. The violations noted that the doughnut shop’s fire suppression system had been altered, and ordered the shop to comply with code provisions requiring that the system be properly inspected.
 

 In addition, plaintiff offered the affidavit of Vincent DiCicco, a fellow firefighter who also responded to the fire. DiCicco
 
 *82
 
 concluded that the fire started in the kitchen area of the doughnut shop, based on his having seen the fire flaring up precisely in that area. DiCicco also stated that he was one of the first firefighters to enter the building, and that when he entered, he did not “observe any evidence that a fire suppression system had activated above or about the deep fat fryer area.” According to DiCicco, a properly functioning fire suppression system would have left “an easily detectable chemical residue.”
 

 To establish entitlement to judgment as a matter of law, defendant had to show either that it did not negligently violate any relevant government provision or that, if it did, the violation did not directly or indirectly cause plaintiffs injuries. In seeking summary judgment, defendant argued only that there was no proximate cause between the alleged violations and plaintiffs injuries, and thus failed to address the “indirect” causation element of General Municipal Law § 205-a. Indeed, defendant’s original motion papers reveal that it limited its argument to common-law negligence principles (though it did cite General Municipal Law § 205-a in its reply affirmation). However, because on this appeal plaintiff does not argue that defendant failed to establish prima facie its entitlement to judgment as a matter of law, we turn to plaintiffs submissions in opposition to the summary judgment motion.
 

 Assuming, arguendo, that defendant made the requisite initial showing (as the Appellate Division held), we conclude that plaintiffs submissions in response raised a triable issue of fact as to whether the alleged code violations directly or indirectly caused his injuries. The relevant code provisions required that defendant maintain the building in a safe condition and that the fire extinguishing system be inspected every six months. DiCicco’s statement that he did not observe a functioning fire extinguishing system, combined with the violation orders which, at the very least, show that the fire suppression system had been altered and required testing, raise a factual question as to whether defendant’s violations resulted in a malfunctioning fire control system that directly or indirectly caused plaintiffs injuries by failing to prevent the fire or by exacerbating it.
 

 Defendant’s argument that the cause of plaintiffs injuries was his lack of oxygen misses the mark: plaintiffs air supply ran out because he remained inside the burning building operating the last water hose so that his fellow firefighters could escape. The depletion of plaintiffs air supply was not a
 
 *83
 
 superseding cause of his injuries. It was the result of an act of courage that was part of plaintiffs efforts in battling the blaze.
 

 Defendant contends that if we accept plaintiffs position, a firefighter bringing a General Municipal Law § 205-a claim need only allege fire code violations and injuries sustained in fighting the fire. This overstates the case. To survive a motion for summary judgment, a plaintiff will always be required to raise a question of fact — as plaintiff did here — that the alleged violations were a direct or indirect cause of the injury or death. That connection will then have to be proven at trial. As noted, here plaintiff offered not only proof of two uncured code violations pertaining to the fire suppression system, but the testimony of a firefighter who saw that the fire suppression system was not operating properly. On these facts, the Appellate Division erred by granting defendant’s motion for summary judgment.
 

 We note that certain language in the Appellate Division’s order appears to suggest that a firefighter’s own negligence can act as a bar to recovery under General Municipal Law § 205-a. The Court stated that “[e]ven assuming that [defendant] failed to maintain a properly-functioning fire protection system and that such failure permitted the fire to ignite or spread, the uncontroverted evidence in the record established that the plaintiffs injuries resulted from the depletion of his air supply, which caused him to be overcome by smoke” (288 AD2d at 434).
 

 Inasmuch as we held in
 
 Mullen v Zoebe
 
 (86 NY2d at 142-145) that comparative fault principles cannot be applied in defense of a General Municipal Law § 205-a action, the Appellate Division decision — to the extent it appears to allow such a defense — is incorrect. Indeed, if such an approach were followed, a property owner (like defendant) could keep its fire suppression system in a complete state of disrepair and in flagrant violation of fire codes and yet be relieved from liability when a firefighter somehow contributes to his injuries while fighting a fire. That result would defeat the twin purposes of General Municipal Law § 205-a — to offer firefighters greater protections and encourage compliance with all codes, statutes and regulations (see 86 NY2d at 140-142).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, defendant’s motion for summary judgment denied, and the complaint as against defendant reinstated.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Graffeo and Read concur.
 

 
 *84
 
 Order reversed, with costs, and the motion for summary judgment of defendants Citibank Corp., 571 Fulton Realty Corp., Scott Heller, as trustee for John Does Nos. 1-25, Fotios Konidaris, Samuel Lorber, Yuping Chin and Samuel Klein denied.
 

 [1]
 

 . The other defendants on this appeal, who are alleged to be co-owners of the building, are 571 Fulton Realty Corp., Scott Heller, Fotios Konidaris, Samuel Lorber, Yuping Chin and Samuel Klein. For ease of reference, throughout this opinion they are collectively referred to as “defendant.” Plaintiff also sued Shamus, Inc., doing business as Donut House, and its owner, Anwar Shahzed. Shamus’s and Shahzed’s motion for summary judgment was denied and no appeal was taken from that order. That aspect of Supreme Court’s order is therefore not before us.
 

 [2]
 

 . Two other amendments, which are not relevant here, were passed in 1990 and 1994 (see L 1990, ch 762; L 1994, ch 664).
 

 [3]
 

 . A 1999 law amended sections 205-a and 205-e to extend the time in which certain actions may be brought on behalf of injured or deceased firefighters and police officers (see L 1999, ch 466).
 

 [4]
 

 . Defendant also concedes for purposes of this appeal that all three of the code provisions plaintiff cites “may form the predicate for a claim under General Municipal Law § 205-a.” The three provisions are Administrative Code of the City of New York §§ 27-127, 27-128 and 27-4275 (b). Section 27-127 states that “[a] 11 buildings and all parts thereof shall be maintained in a safe condition.” Section 27-128 provides that “[t]he owner shall be responsible at all times for the safe maintenance of the building and its facilities.” Finally, section 27-4275 (b) states that “[t]he extinguishing system and its automatic valve operation shall be inspected, tested and serviced every six months on behalf of the owner of the occupancy by persons properly trained and qualified by the manufacturer of the specific system installed. A record of such inspection, testing and servicing shall be kept on the premises for inspection by the commissioner and the commissioner of buildings.”
 

 [5]
 

 . Plaintiff testified at a deposition that he was injured when, after the air ran out in his tank, he “[pjulled the [air] regulator out [of his mask] and still operating the [hose] line[, he was] burning up and taking a load of smoke.”