OPINION OF THE COURT
Charles Edward Ramos, J.
This is an action for damages arising out of the rescission of the sale of a bronze sculpture created by the artist Pablo Picasso, entitled Tete Cubiste (Tete de Fernande) (the sculpture).
Defendant SWCA, Inc. moves for partial summary judgment dismissing plaintiff Christie’s Inc.’s first and third causes of action for breach of contract, and for liability of principal as to agent.
Christie’s cross-moves for partial summary judgment as to liability against SWCA and Sculpture Guild of America (SGA), on the ground that they each gave a full warranty of authenticity in connection with the sale of the sculpture.
Background[1]
In the spring of 2002, defendant SGA purchased the sculpture from Universal Antiques for $30,000, and offered it to SWCA. SWCA contacted independent art dealer, Thomas Segal, to inquire if he knew of a potential buyer. Segal, in turn, contacted Christie’s.
On June 27, 2002, Professor Werner Spies, author of the catalogue raisonné of Picasso sculptures, issued a certificate of authenticity (Spies certificate) for the sculpture, upon payment by SGA. In the Spies certificate, he indicated that the sculpture *382 is a Picasso from the Vollard edition[2] (exhibit O, annexed to the Fraser off.).
On July 16, 2002, SWCA and Christie’s signed a letter agreement (July 16 letter agreement), that authorized Christie’s to sell the sculpture on behalf of SWCA for $5,000,000. The July 16 letter agreement granted to Christie’s the right to rescind the sale under certain circumstances. SWCA furnished to Christie’s the Spies certificate.
Thereafter, Christie’s offered to sell the sculpture to nonparty art collector, Samuel I. Newhouse Jr. On July 19, 2002, New-house and Christie’s signed a letter agreement (July 19 letter agreement). Pursuant to that agreement, Christie’s agreed that Newhouse could rescind the sale if the sculpture was found to be unauthentic.
Additionally, Christie’s agreed to pay Segal 50% of the commission that it received for the sale of the sculpture. After the sale to Newhouse, Christie’s paid Segal $275,000. A year and a half after the sale, Christie’s unsuccessfully offered to resell the sculpture on Newhouse’s behalf. In September 2004, Christie’s informed Newhouse that it recently developed concerns about the authenticity of the sculpture, and sought to conduct additional research about its origins. Christie’s sent the sculpture to France for inspection by Pablo Picasso’s son, Claude. Under French law, Claude Picasso retains the “droit moral,” or moral right, to authenticate artwork created by his father.[3] On October 19, 2004, Claude Picasso issued a certificate of authenticity for the sculpture.
Nonetheless, Christie’s persisted and continued its efforts to undermine the authenticity of the sculpture. Christie’s now contends that the sculpture is a surmoulage, a bronze cast of a second or third generation bronze, rather than being from the Vollard edition, a bronze cast from the original clay master created by Picasso. Most dealers consider surmoulages to be unauthentic.
After Christie’s informed Newhouse of its doubts concerning the sculpture’s authenticity, Newhouse stated that it was “a legal problem.” In June 2005, Christie’s rescinded the sale to *383 Newhouse. Thereafter, Christie’s sought to rescind the sale from SWCA, and demanded a refund of the purchase price on the ground that it believed that the sculpture was a surmoulage; SWCA refused.
Thereafter, Christie’s commenced this action asserting claims for breach of contract, liability of principal to agent, mutual mistake and fraudulent conveyance, and seeking indemnification for the Segal commission.
Discussion
To prevail on a motion for summary judgment, the movant must establish entitlement to judgment , as a matter of law, by producing sufficient evidence to demonstrate the absence of any trial issues of material fact (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003]). For the below stated reasons, SWCA’s motion for summary judgment is denied, and Christie’s cross motion for summary judgment is denied, in part, and granted, in part.
I. Breach of Contract
The July 16 letter agreement entitles Christie’s to rescind the sale of the sculpture from SWCA “at any time” if it “reasonably determines that the sale may expose Christie’s” to any liability, “including liability resulting from claims relating to title or authenticity.”
SWCA moves for summary judgment as to the first cause of action for breach of contract on the ground that there are no triable issues of fact that the condition for rescission contained in the July 16 letter agreement was not met.
In contrast, Christie’s contends that the July 16 letter agreement granted it a broad right to rescind the agreement. In addition, Christie’s relies upon Greenwood v Koven (1993 WL 541181, 1993 US Dist LEXIS 18272 [SD NY 1993]) for the principle that a subjective standard should apply to its exercise of the rescission provision and its belief that it was exposed to liability as to the sculpture’s authenticity.
The July 16 letter agreement explicitly gave Christie’s the right to rescind the sale, but that right was conditioned upon Christie’s “reasonable belief’ that it would be exposed to liability. Under so-called “satisfaction clauses,” where one party is granted a certain level of discretion to exercise a contract right to its satisfaction, courts must determine whether the parties intended that party to be reasonably satisfied, that is, subject *384 to the objective standard, or merely honestly, albeit unreasonably, satisfied, that is, subject to a subjective standard (J.D. Cousins & Sons, Inc. v Hartford Steam Boiler Inspection & Ins. Co., 341 F3d 149, 153 [2d Cir 2003]; Greenwood v Koven, 880 F Supp 186, 199 [1995]).
Generally, the phrase “reasonably determines” suggests that the parties intended a standard of objective reasonableness to apply (Misano di Navigazione, SpA v United States, 968 F2d 273, 275-276 [2d Cir 1992]; see also Restatement [Second] of Contracts § 228 [an objective standard is preferred, unless the parties clearly express otherwise in their agreement]). The phrase “reasonably determines” is analogous to the phrase “reasonable belief,” as contained in the July 16 letter agreement.
The contractual language at issue in Greenwood (1993 WL 541181, *7, 1993 US Dist LEXIS 18272, *22 [1993]), upon which Christie’s relies, is distinguishable. In Greenwood, the contract granted the purchaser the right to rescind the sale of a pastel by the painter Georges Braque based upon the purchaser’s “sole discretion” as to whether it would be exposed to liability. Here, Christie’s right to rescind is conditioned upon its “reasonable belief’ that it would be exposed to liability, and thus, is subject to the objective standard.
In support of its contention that it reasonably believed that it may have been exposed to liability, Christie’s argues that the consensus of opinions among “experts” at the time it conducted its investigation was that the sculpture was a surmoulage, and thus, not an authentic work by Picasso. Christie’s has little to support this contention. Christie’s points to the fact that Dr. Valerie Fletcher[4] omitted to discuss the sculpture in her 2003 essay on casts of Tete de Fernande. Christie’s contends that Dr. Fletcher also declined to confirm (or contest) the authenticity of the sculpture. However, Christie’s does not contend that Fletcher is authorized to authenticate the sculpture, nor has Fletcher submitted any affidavit or statement that supports Christie’s doubts.
Christie’s also relies on a 2005 study conducted by the VanDuzen Archives that “noted differences” between the sculpture and known casts. The study did not conclude that the sculpture was a surmoulage. Christie’s also states that two out of three *385 experts who reviewed the VanDuzen Archives on behalf of Christie’s opined that the sculpture was a surmoulage, but fails to submit any sworn statement to that effect.
Additionally, Christie’s alleges that Werner Spies declined to reissue his certificate of authenticity and “informed Christie’s that he could not comment on the property as the matter was within the domain of the Picasso family” (Frazier off 11114). However, Christie’s does not allege that Spies was under an obligation to reissue the certificate of authenticity, having already issued one in 2002.
Christie’s places significance on Claude Picasso’s refusal in 2005 to reaffirm his 2004 certificate of authenticity. However, as with the Spies certificate, Claude Picasso had already issued a certificate of authenticity.
Although Christie’s decision to rescind based upon its fear of exposure to liability appears to have been motivated more by rumor and speculation, ultimately, whether Christie’s belief was reasonable is a question of fact for the factfinder (Argentina v Otsego Mut. Fire Ins. Co., 86 NY2d 748, 750 [1995]). Therefore, the court cannot determine as a matter of law whether the condition for rescission set forth in the July 16 letter agreement was met. SWCA’s motion for summary judgment as to the first cause of action for breach of contract is denied.
II. Liability of Principal to Agent
SWCA moves for summary judgment as to the third cause of action for liability of principal to agent that is premised upon the contention that Christie’s was acting as SWCA’s agent, and that it is liable for the breach of warranty of authenticity contained in the July 19 letter agreement.
SWCA acknowledges that SWCA and Christie’s had an agency relationship, as memorialized in the July 16 letter agreement, and that SWCA was acting as Christie’s Inc.’s principal in the Newhouse transaction. Nonetheless, SWCA argues that Christie’s went beyond its authority in furnishing an unqualified warranty of authenticity to Newhouse, and by selling the sculpture to an undisclosed buyer, non-art merchant Newhouse. Thus, SWCA contends that it cannot be bound as a principal to Christie’s acts committed beyond the scope of authority.
Christie’s contends that SWCA extended a warranty of authenticity for the sculpture by providing Christie’s with the Spies certificate at the time of the sale. Alternatively, Christie’s *386 argues that an express warranty of authenticity is created under article 2 of the Uniform Commercial Code (UCC), under section 13.01 of the Arts and Cultural Affairs Law, and under customs and practices in the arts industry.
To establish that the unqualified warranty that Christie’s included in the July 19 letter agreement with Newhouse was not authorized, SWCA points to the language of the July 16 letter agreement. It states, “You [SWCA] authorize us [Christie’s] to make the same representations and warranties on your behalf to any purchaser with whom we conclude an agreement pursuant to the terms of this letter” (emphasis added).
The plain language of the July 16 letter agreement states that Christie’s was only authorized to make, on SWCA’s behalf, the same representations and warranties contained in the July 16 letter agreement.
SWCA made the following representations and warranties in the July 16 letter agreement: “You [SWCA] represent and warrant that . . . you have no reason to believe that the Property is not authentic or is counterfeit.” (Emphasis added.)
The July 19 letter agreement with Newhouse obligates Christie’s to “provide an original certificate by Werner Spies confirming the authenticity of the Property.” SWCA contends that by including this phrase in the July 19 letter agreement, Christie’s went beyond its authority, because it was authorized to provide only the representations and warranties to New-house that SWCA made in the July 16 letter agreement.
SWCA’s argument is without merit. Although SWCA may have sought to limit the representations and warranties that Christie’s was permitted to offer on its behalf, SWCA expressly authorized Christie’s to furnish to the ultimate buyer the Spies certificate, in addition to other documents in its possession relating to “the history and provenance” of the sculpture. The July 16 letter agreement states, “You [SWCA] agree that you will furnish to Christie’s, for delivery to buyer, all documents and records in your possession relating to the history and provenance of the Property, as well as the original certificate of authenticity from Spies” (emphasis added).
By authorizing Christie’s to furnish to the buyer the Spies certificate, the transaction to sell the sculpture implicates the application of the Arts and Cultural Affairs Law.
*387 Under the Arts and Cultural Affairs Law,[5] the furnishing of a certificate of authenticity by an art merchant to a non-art merchant creates an express warranty.
Arts and Cultural Affairs Law § 13.01 (1) (b) states,
“Whenever an art merchant, in selling or exchanging a work of fine art, furnishes to a buyer of such work who is not an art merchant a certificate of authenticity or any similar written instrument it . . . [s]hall create an express warranty for the material facts stated as of the date of such sale or exchange” (emphasis added).
Arts and Cultural Affairs Law § 13.01 was designed to regulate express warranty claims brought by laypeople after purchasing fine art from art merchants,[6] in order to protect unknowing buyers from knowing sellers who may try to use the unequal balance of information power to their own advantage (see Greenwood v Koven, 880 F Supp 186 [1995]; Levin v Dalva Bros., 459 F3d 68, 77 [1st Cir 2006] [applying New York law]).
SWCA furnished to Christie’s the Spies certificate. Christie’s, acting as SWCA’s agent, furnished the Spies certificate to New-house, a non-art merchant. If Christie’s furnishing of the Spies certificate to Newhouse was authorized or otherwise affirmed by its principal, SWCA, then SWCA cannot escape that an express warranty was created under Arts and Cultural Affairs Law § 13.01.
As to the identity of the buyer that Christie’s was authorized to sell to, the July 16 letter agreement states, “You [SWCA] appoint Christie’s ... to sell the Property privately to a specific buyer who has been previously identified by us . . . Unless otherwise agreed between us, Christie’s . . . may only offer the Property privately to that potential client.”
*388 Although Christie’s did not consult with SWCA before transacting with Newhouse, SWCA does not contend that it ever inquired as to the identity of Christie’s buyer or the terms of Christie’s sale agreement. Further, SWCA does not dispute that the July 16 letter agreement authorized Christie’s to furnish to the buyer the Spies certificate. Additionally, the July 16 letter agreement does not contain any limitation concerning a buyer’s status as an art merchant. Finally, SWCA accepted from Christie’s the $5 million sale proceeds at the conclusion of the sale to Newhouse, retaining a portion and forwarding $4.2 million to SGA (SWCA’s rule 19-a statement 1i 9).
Thus, SWCA’s contention that it would have strenuously objected to Christie’s furnishing of the Spies certificate to the ultimate buyer and to Christie’s selection of a non-art merchant rings hollow, in light of SWCA’s failure to inquire or protest following the close of the sale to Newhouse. Under these circumstances, SWCA affirmed Christie’s selection of the buyer, New-house (Matter of Cologne Life Reins. Co. v Zurich Reins. [N. Am.], 286 AD2d 118, 127 [1st Dept 2001]; Restatement [Second] of Agency §§ 94, 98 [an affirmance of an unauthorized transaction can be inferred from a failure to repudiate it]). Therefore, SWCA cannot now disclaim that an express warranty was created under Arts and Cultural Affairs Law § 13.01 in the Spies certificate that it is bound by.
Nonetheless, the extent of what the express warranty of authenticity entails is not nearly as broad as Christie’s contends. In the leading case interpreting the predecessor statute to Arts and Cultural Affairs Law § 13.01, the court fashioned a standard for determining liability for breach of warranty that is applicable here. The proper standard is whether the representations furnished by the seller with respect to the artwork can be said to have had a reasonable basis in fact at the time that the representations were made, as shown by testimony as a whole (Dawson v G. Malina, Inc., 463 F Supp 461, 467 [SD NY 1978]).
Ultimately, whether SWCA’s description of the sculpture contained in the Spies certificate had a reasonable basis in fact at the time of the sale to Christie’s is a question of fact, to be measured by the expert testimony provided at trial (Dawson, 463 F Supp at 467).
For these reasons, SWCA’s motion for summary judgment as to the third cause of action for liability of principal to agent is denied.
*389 III. Christie’s Cross Motion for Partial Summary Judgment
Christie’s cross-moves for partial summary judgment as to liability against SGA and SWCA, that they each gave a full warranty of authenticity in connection with the sale of the sculpture.
SGA and SWCA dispute whether there was an agency relationship between them in regard to SWCA’s sale of the sculpture to Christie’s. Resolving this material dispute is elemental in determining whether SGA may be liable for SWCA’s actions.
Therefore, Christie’s cross motion for partial summary judgment is denied as to SGA. Christie’s cross motion is granted as to SWCA, to the extent consistent with the determination that SWCA’s furnishing of the Spies certificate created an express warranty under Arts and Cultural Affairs Law § 13.01.
Accordingly, it is ordered that the summary judgment motion is denied; and it is further ordered that the cross motion for partial summary judgment is denied in part and granted in part; and it is further ordered that the remainder of the action shall continue.

. The facts set forth herein are taken from the parties’ Rules of Practice for the Commerical Division rule 19-a statements of undisputed facts or the pleadings, unless otherwise indicated.

. In 1909, Picasso created the original clay sculpture of the Tete de Fernande. From the original, a limited number of bronze casts were made from a plaster cast of Picasso’s original clay sculpture, under the authorization of Picasso’s art dealer, Ambrose Vollard. These bronze casts are known as the Vol-lard edition, and are considered extremely valuable.

. See Greenwood v Koven, 880 F Supp 186, 189 (SD NY 1995).

. Dr. Fletcher is a curator at the Hirshhorn Museum and Sculpture Garden in Washington, D.C. and considered an expert in the field.

. Express warranties are created by a seller if a description of the goods is made part of the basis of the bargain under UCC 2-313 (1) (b). However, the Arts and Cultural Affairs Law governing express warranties in the art world “supplant[ ] the otherwise applicable provisions of the Uniform Commercial Code” (Levin v Dalva Bros., 459 F3d 68, 77 [1st Cir 2006] [applying New York law]).

. Arts and Cultural Affairs Law § 11.01 (2) defines an “[a]rt merchant” as “a person who is in the business of dealing ... in works of fine art... or a person who by his occupation holds himself out as having knowledge or skill peculiar to such works . . . or to whom such knowledge or skill may be attributed by his employment of any agent or other intermediary.” “Certificate of authenticity” is defined as “a written or printed statement of fact or opinion confirming, approving or attesting to the authenticity of the authorship of a work of fine art” (§ 11.01 [6]).