| Guarantee Co. of N. Am. USA v Xin Dev. Group Intl., Inc. |
|---|
| 2025 NY Slip Op 34408(U) |
| November 18, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 654742/2023 |
| Judge: Anar R. Patel |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 45

------------------------------------------------------------------------X

THE GUARANTEE COMPANY OF NORTH AMERICA USA,

|  |  |  |
|---|---|---|
| | **INDEX NO.** | 654742/2023 |

Plaintiff,

|  |  |
|---|---|
| **MOTION DATE** | 02/13/2025 |

- v -

XIN DEVELOPMENT GROUP INTERNATIONAL, INC., XIN QUEENS HOLDING, LLC, QUEENS THEATRE HOLDCO, LLC, QUEENS THEATRE OWNER LLC

|  |  |
|---|---|
| **MOTION SEQ. NO.** | 003 |

**DECISION + ORDER ON MOTION**

Defendants.

------------------------------------------------------------------------X

**HON. ANAR RATHOD PATEL:**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 52–83, 95–106, 108, 114–117, 119, 120, 126, 127 were read on this motion to/for JUDGMENT – SUMMARY.

The Guarantee Company of North America USA ("Plaintiff") brings this action against Xin Development Group International, Inc. ("Xin Development"), Xin Queens Holding, LLC, Queens Theatre Holdco, LLC, and Queens Theatre Owner LLC ("Queens Theatre") (collectively, "Defendants") asserting claims for specific performance and breach of contract in connection with the parties' indemnity agreement ("the Agreement") (NYSCEF Doc. No. 1, Summons and Complaint).  Under the Agreement, Plaintiff acts as the surety for a Landmark Preservation Commission Site Bond issued by Plaintiff on behalf of Defendants.  Now before the Court is Plaintiff's motion, pursuant to CPLR § 3212, for summary judgment on its claims and seeking $3,000,000 in collateral security and $126,394.90 in damages.  Defendants oppose the motion.

**Relevant Factual and Procedural Background**

This dispute arises from a surety and indemnification arrangement adopted by the parties concerning Queens Theatre's agreement with the New York City Landmarks Preservation Commission ("the City") to remove, restore, and reinstall certain interior landmark lobby space at the RKO Keith Theatre located at 135-29 Northern Boulevard, Flushing, NY ("the Project").  On February 12, 2018, the parties entered into the Agreement, whereby Defendants, as the indemnitors, agreed jointly and severally to provide collateral to Plaintiff, as the surety, "[i]n consideration of the execution of any bonds . . . and as an inducement to such execution by [Plaintiff]." NYSCEF Doc. No. 54, Exhibit A ("Agreement"). On or about May 10, 2018, Plaintiff then issued a Landmarks Preservation Commission Site Bond ("the Bond") on behalf of Queens

654742/2023   THE GUARANTEE COMPANY OF NORTH AMERICA USA vs. XIN DEVELOPMENT GROUP INTERNATIONAL, INC. ET AL
Motion No.  003

Page 1 of 9

Theatre to the City concerning Queens Theatre's obligations under the Project. NYSCEF Doc. No. 55, Exhibit B ("Bond"). Pursuant to the terms of the Bond, in the event that Queens Theatre failed to meet its construction obligations, and upon written notice of breach from the City, Plaintiff agreed to fully perform and complete the required work. *Id.* ¶ 1. The Bond had an initial penal sum of $10,000,000, an amount reduced during the course of the Project to $6,000,000; during the pendency of this action, this amount has been further reduced to $5,000,000. Defendants' Response to Plaintiff's Rule 19-a Statement of Material Facts, NYSCEF Doc. No. 78, ¶¶ 11, 14, 31 (Defs. Statement). At the time the Bond was issued, Defendants provided to Plaintiff collateral in the amount of $2,000,000. *Id.* ¶ 13.

As relevant here, under the terms of the Agreement, Plaintiff may request "at any time" collateral security from Defendants "until [Defendants] furnish to [Plaintiff] competent written evidence, satisfactory to [Plaintiff], of the termination of any past, present and future liability under any Bond." Agreement at 1. Additionally, upon Plaintiff's demand, Defendants will "procure the discharge of [Plaintiff] from any Bond and all liability by reason thereof," and if discharge is not possible, then Defendants will "either deposit collateral with [Plaintiff], acceptable to [Plaintiff], sufficient to cover all exposure under such bond . . . or make provisions acceptable to [Plaintiff] for the funding of the bonded obligations." *Id*. at 2. The Agreement further provides that:

> To further protect, exonerate and save harmless [Plaintiff], [Defendants] shall pay over to [Plaintiff], all sums of money which the [Plaintiff] . . . may be liable to pay by reason of its execution of such Bond . . . . Such payment shall be equal to the larger of (a) the amount of any reserve set by [Plaintiff], or (b) such amount as [Plaintiff], in its sole judgment, shall deem is sufficient to protect it from loss. Such payment is to be made to the Surety as soon as Surety notifies Indemnitors to deposit such funds with Surety . . . . [Defendants] acknowledge that their failure to pay, immediately on demand, that sum demanded by [Plaintiff] will cause irreparable harm for which [Plaintiff] has no adequate remedy at law. [Defendants] confirm and acknowledge that [Plaintiff] is entitled to injunctive relief for specific enforcement of the foregoing provision.

*Id.* at 1. Finally, the Agreement also establishes that Defendants "exonerate, indemnify, and hold harmless [Plaintiff] against any and all liability, loss, costs and expenses of whatsoever kind and nature, including court costs [and] attorney fees . . . ." *Id.*

By letter dated August 10, 2023, Plaintiff demanded that Defendants secure its discharge under the Bond, or deposit additional collateral in the amount of $4,000,000 from Defendants, *i.e.*, to address Plaintiff's remaining exposure under the Bond at that time.[1] Defs. Statement ¶ 18. Plaintiff made this demand based on its concern over Defendants' financial stability and Queens Theatre's ability to meet the obligations on the Project under the Bond. *Id.* ¶¶ 15–18. Plaintiff had learned that in July 2023, RKO Flushing Development LLC ("RKO") commenced a foreclosure action against Queens Theatre and Xin Development. *Id.* RKO was a lender to Queens

---

[1] Following the reduction of the penal sum under the Bond during the pendency of this litigation, Plaintiff reduced its demand for additional collateral accordingly, to $3,000,000. Defs. Statement ¶¶ 31–32.

**654742/2023   THE GUARANTEE COMPANY OF NORTH AMERICA USA vs. XIN DEVELOPMENT**          **Page 2 of 9**
**GROUP INTERNATIONAL, INC. ET AL**
**Motion No. 003**

Theatre in connection with the construction of the Project, and Xin Development guaranteed RKO's loan. *Id.* Plaintiff had also received an auction notice regarding the compelled sale of another property, the collateral for a loan guaranteed by Xin Development issued by KM 429 Kent Avenue US Financing LLC ("Kent Lender"). *Id.* Defendants did not secure Plaintiff's discharge under the Bond or provide additional collateral funds. *Id.* ¶¶ 20–21.

Plaintiff filed the Complaint on September 27, 2023, alleging that Defendants' failure to secure Plaintiff's discharge or to provide additional collateral constituted a breach of the Agreement, and seeking to enforce Defendants' obligation under the Agreement and to recover damages. NYSCEF Doc. No. 1. On December 26, 2023, Defendants filed the Motion to Dismiss the Complaint, which the Court denied on September 10, 2024. *See* NYSCEF Doc. Nos. 7, 42. Plaintiff filed the instant Motion for Summary Judgment on February 13, 2025. NYSCEF Doc. No. 52. Defendants oppose the Motion.

## Legal Analysis

In moving for summary judgment, Plaintiff must make a *prima facie* showing that it is entitled to judgment as a matter of law by presenting "sufficient evidence to demonstrate the absence of any material issue of fact." *Giuffrida v Citibank Corp*., 100 N.Y.2d 72, 81 (2003). "This burden is a heavy one," under which "facts must be viewed in the light most favorable to the non-moving party." *William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh*, 22 N.Y.3d 470, 475 (2013). A failure to make this showing will require the denial of the motion for summary judgment, regardless of the adequacy of opposing papers. *Id.* If Plaintiff makes this *prima facie* showing, the burden shifts to Defendants to produce evidentiary proof sufficient to establish the existence of material issues of fact. *Giuffrida*, 100 N.Y.2d at 81. "[M]ere conclusions, expressions of hope or unsubstantiated allegations are insufficient to raise an issue of fact." *Alpine Custom Floors, Inc. v Yurcisin*, 209 A.D.3d 460, 460–461 (1st Dept. 2022).

*Specific Performance*

"The elements of a cause of action for specific performance of a contract are that the plaintiff substantially performed its contractual obligations and was willing and able to perform its remaining obligations, that defendant was able to [perform its obligations], and that there was no adequate remedy at law." *EMF Gen. Contr. Corp. v Bisbee*, 6 A.D.3d 45, 51 (1st Dept. 2004). Defendants do not dispute the existence of the Agreement or the clarity of its terms, nor do they contest Plaintiff's performance under the Agreement. Instead, Defendants argue that there is an issue of material fact as to whether Plaintiff's demand for additional collateral was reasonable. Defendants further argue that Plaintiff fails to explain why monetary damages are inadequate, such that specific performance is an appropriate remedy.

Defendants concede that Plaintiff made a demand of additional collateral in the amount of the difference between the collateral previously provided and the Bond's remaining penal sum at the time. Defs. Statement ¶¶ 18–19. Defendants also concede that they failed either to procure Plaintiff's discharge under the Bond or to provide the demanded collateral. *Id.* ¶¶ 20–22. Defendants argue only that Plaintiff's demand was unreasonable, such that they were under no

654742/2023   THE GUARANTEE COMPANY OF NORTH AMERICA USA vs. XIN DEVELOPMENT                    Page 3 of 9
GROUP INTERNATIONAL, INC. ET AL
Motion No. 003

3 of 9

obligation to comply with the terms of the Agreement requiring them to procure Plaintiff's discharge or provide collateral.

"A [party] dealing at arm's length with relative equality of bargaining power must abide by the collateral and security terms of a contract . . . so long as the sum demanded is reasonable." *BIB Const. Co. v. Fireman's Ins. Co. of Newark, New Jersey*, 214 A.D.2d 521, 523 (1st Dept. 1995). "Where a defendant seeks to challenge the amount sought, it is the defendant's burden to establish that the costs and expenses were unreasonable or were incurred in bad faith." *Colonial Sur. Co. v. A&R Cap. Assocs.*, 420 F. Supp. 3d 38, 47 (E.D.N.Y. 2017). "Courts applying New York law have stated that as a general matter, '[a] demand for collateral is reasonable if the sum demanded is commensurate with the claims made against the surety or the amount sought by a third party in litigation.'" *RLI Ins. Co. v. Pro-Metal Constr. Inc.*, No. 18-CV-2762(AJN), 2019 WL 1368851, at *4 (S.D.N.Y. Mar. 26, 2019) (citation omitted).

Defendants argue that "[t]he cases where New York courts awarded the surety collateral security all involved claims against the surety or third-party claims involving the bond." NYSCEF Doc. No. 77 at 12 (Defs. Mem. in Opp.). To be sure, the majority of cases cited by the parties addressing demands for collateral security do concern circumstances where claims were made against the surety, prompting commensurate demands for collateral. However, Defendants cite no authority for the proposition that a claim *must* be made against the surety for a demand for collateral to be reasonable.[2] That is, the existence of a claim against the surety is sufficient, but not necessary, for a collateral demand to be reasonable. But concerns as to an indemnitor's financial stability may also serve as sufficient justification for a collateral demand.

*Atlantic Specialty Ins. Co. v. Party City Corp.* is instructive here. In *Party City*, the court addressed terms of an indemnification agreement parallel to the terms at issue here, pursuant to which the parties "agreed that plaintiff has 'sole and absolute discretion' to demand collateral 'at any time and for any reason' in 'the form and amounts acceptable to' it." *Atlantic Specialty Ins. Co. v. Party City Corp.*, No. 652075/2020, 2020 WL 6154162, at *1 (N.Y. Sup. Ct., N.Y. Cnty Oct. 16, 2020). The court held that "[t]hese agreed-upon terms must be enforced regardless of whether they are fair." *Id.* Consequently, the court held that the plaintiff was entitled to summary judgment on its claim for specific performance due to defendants' refusal to post the demanded collateral," finding that "[t]here is nothing arbitrary or unreasonable about demanding collateral" on the basis of the indemnitors' financial instability. *Id.*

Defendants do not contest whether Plaintiff's concerns regarding their financial stability were reasonable at the time of its demand, or whether the amount demanded was unreasonable. Instead, they argue that the proceedings giving rise to Plaintiff's concerns about Defendants' financial stability have since either been stayed or resolved, and they further argue that the City

---

[2] Defendants cite *Liberty Mut. Ins. Co. v. Biltmore Gen Contractors, Inc.* in support, arguing that in that case, the court only awarded additional collateral for the liability arising from lawsuits where the surety was named as a party, but did not award collateral relating to lawsuits where the surety was not named as a party. *See Liberty Mut. Ins. Co. v. Biltmore Gen. Contractors, Inc.*, No. 21-CV-5130(RPK)(RER), 2023 WL 5350813 (E.D.N.Y. Aug. 21, 2023). However, Defendants fail to address the fact that the surety in *Liberty Mutual* only requested collateral "against the potential liability . . . arising from the nine lawsuits in which plaintiff is a named party": that is, the issue of demands based on lawsuits in which it was *not* a party was not before the court. *Id.* at *3.

[* 4]

has never questioned Defendants' ability to complete the Project. But any developments in Defendants' financial condition following Plaintiff's demand for additional collateral have no bearing on whether the demand was reasonable *at the time it was issued*.[3] Similarly, Defendants cite no authority for the proposition that Plaintiff is bound by a third party's risk assessment. *Cf. Colonial Sur. Co. v. Eastland Const., Inc.*, No. 603656/08, 2009 WL 2440307 (N.Y. Sup. Ct., N.Y. Cnty July 30, 2009) ("Defendants' argument that Colonial already possesses adequate collateral . . . is unavailing given the plain and unambiguous language of Paragraph 7 of the Indemnity Agreement.").

Furthermore, the Agreement establishes that Defendants' failure to furnish collateral "will cause [Plaintiff] irreparable harm for which [Plaintiff] has no adequate remedy at law" and thus "[Plaintiff] is entitled to injunctive relief for specific enforcement." Agreement at 1. Concerning demands for collateral under contracts like those at issue here, "[t]he damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate." *Bib Constr. Co.*, 214 A.D.2d at 523 (quoting *Nat'l Sur. Corp. v. Titan Const. Corp.*, 26 N.Y.S.2d 227, 230 (Sup. Ct., N.Y. Cnty 1940)); *Safeco Ins. Co. of Am. v. Hirani/MES, JV*, 480 F. App'x 606, 608 (2d Cir. 2012) (same). Consequently, Defendants' "obligation to make the deposit is subject to enforcement by specific performance" pursuant to the terms of the Agreement. *Bib Constr. Co.*, 214 A.D.2d at 523.

The Agreement "specifically states that the amount of the deposit is at the 'sole [judgment]' of the surety." *Bib Const. Co.*, 214 A.D.2d at 523. Under these terms, Defendants "must abide by the terms of the contract" so long as the demand is reasonable. *Id.*; *see also Am. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 301 (2d Cir. 1989) (citation and quotations omitted) ("If the parties had intended to give security deposited upon the maturity or liquidation of claims, they would have [so] conditioned the defendants' obligation" instead of providing "for the giving of security whenever the plaintiff, in anticipation of possible losses, might set up a reserve to cover them"). Plaintiffs provide a sufficient basis for the reasonableness of their demand—*i.e.*, concerns about Defendants' financial stability stemming from several foreclosure actions—as well as its amount, which is commensurate with the balance of the penal sum under the Bond. Defendants fail to establish a genuine dispute of material fact that might rebut these conclusions; furthermore, additional discovery could not "defeat plaintiff's exercise of its unambiguous, bargained-for right." *Party City*, 2020 WL 6154162, at *1. Therefore, the Court grants Plaintiff's motion for summary judgment on its claim for specific performance.

---

[3] Defendants assert, in supplemental briefing, that Plaintiff's demand is unreasonable because the cost of the remaining restoration work has now been reduced to "about $2.4 million." NYSCEF Doc. No. 95 at 5. This argument fails for the same reason.

654742/2023   THE GUARANTEE COMPANY OF NORTH AMERICA USA vs. XIN DEVELOPMENT          Page 5 of 9
GROUP INTERNATIONAL, INC. ET AL
Motion No.  003

*Breach of Contract*

To establish *prima facie* entitlement to summary judgment on its breach of contract claim, Plaintiff must establish the existence of a contract, its performance under the contract, Defendants' breach of the contract, and resulting damages. *Second Source Funding, LLC v. Yellowstone Capital*, LLC, 144 A.D.3d 445, 445–446 (1st Dept. 2016); *Junger v. John V. Dinan Assocs., Inc.*, 164 A.D.3d 1428, 1430 (2d Dept. 2018). Plaintiff asserts that it has incurred losses due to Defendants' failure to pay bond premiums since the filing of this action. Plaintiff further claims that its damages also encompass the costs it has incurred in bringing the present action.

The Agreement establishes that Defendants "shall pay or cause to be paid" to Plaintiff "the agreed premium." Agreement at 1. Again, Defendants do not dispute the existence of the Agreement or Plaintiff's performance under the Agreement. Defendants also do not contest that they failed to pay certain premiums owed under the Agreement. *See* Defs. Statement ¶ 26; Defs. Mem. in Opp. at 19. Instead, Defendants argue that they "reasonably withheld payments of the Bond annual premium" since Plaintiff filed this action, as the filing of this case "created significant uncertainties" relating to the Bond and the Agreement. Defs. Mem. in Opp. at 19. Defendants further argue that Plaintiff has since elected to deduct the unpaid premiums from the existing collateral of $2,000,000 currently in Plaintiff's possession. Defs. Statement ¶ 34; Defs. Mem. in Opp. at 19. In support of this claim, Defendants provide an e-mail in which an individual, ostensibly a representative of Plaintiff, advised that Plaintiff "will apply collateral on hand to pay the past due premium." NYSCEF Doc. No. 76. Plaintiff does not meaningfully dispute this allegation. *See* NYSCEF Doc. No. 83 at 16–17.

Defendants cite no basis within the four corners of the Agreement or outside of it for their unilateral election to withhold premium payments. Because Defendants also concede that they failed to pay the premium payments that were owed under the Agreement, Defendants fail to establish a material issue of fact as to whether they breached the Agreement by failing to pay the Bond premiums.[4] However, Defendants do raise a material issue of fact as to Plaintiff's claim for damages arising from Defendants' failure to pay the bond premiums. Summary judgment is therefore inappropriate on this theory of damages based on the record presently before the Court.

Nevertheless, as Plaintiff correctly observes, repaying itself for the unpaid Bond premiums *via* the collateral it presently possesses would necessarily "reduce the collateral available to [Plaintiff], thus leaving [Plaintiff] open to greater exposure." NYSCEF Doc. No. 83 at 17. Consequently, the Court finds it appropriate to set the collateral to be posted pursuant to Plaintiff's claim for specific performance at Plaintiff's remaining exposure under the Bond, *i.e.*, the substance of both Plaintiff's initial demand to Defendants and the relief that Plaintiff seeks in this action. Thus, to the extent that Plaintiff has withdrawn from the collateral to cover the unpaid premiums, the remaining exposure under the Bond—and therefore the additional collateral Defendants are

---

[4] Defendants argue that there is also an issue of material fact as to their breach of the Agreement as to the failure to provide additional collateral, on the basis that the proceedings underlying Plaintiff's concerns as to Defendants' financial stability "have been resolved by the Defendants" and "do not involve the Bond or arise from the Bond." Defs. Mem. in Opp. at 18–19. For the reasons set forth above, these arguments are unavailing. Nevertheless, as set forth herein, Plaintiff also fails to establish its entitlement to damages on this theory of breach.

654742/2023 THE GUARANTEE COMPANY OF NORTH AMERICA USA vs. XIN DEVELOPMENT GROUP INTERNATIONAL, INC. ET AL
Motion No. 003

Page 6 of 9

required to provide to Plaintiff—has increased commensurately beyond the $3,000,000 cited in Plaintiff's motion papers.

*Attorneys' Fees*

Plaintiff also asserts that, pursuant to the Agreement, it is entitled to its attorneys' fees incurred in enforcing the Agreement. "An award of attorneys' fees is within the sound discretion of the trial court." *O'Mahony v. Whiston*, 224 A.D.3d 609, 612 (1st Dept. 2024). As relevant here, the Agreement provides that Defendants "exonerate, indemnify, and hold harmless [Plaintiff] against any and all liability, loss, costs and expenses of whatsoever kind and nature, including court costs, attorney fees . . and any other losses, costs or expenses which [Plaintiff] may sustain or incur by reason of, or in consequence of the execution of such Bonds . . . ." Agreement at 1. Again, Defendants do not contest the validity of these terms. Instead, Defendants only argue that Plaintiff is not entitled to its attorneys' fees and costs because there "are issues of facts whether [Defendants] have breached" the Agreement. For the reasons set forth above, this argument fails.

However, Plaintiff's motion for attorneys' fees fails on independent grounds. "Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule[.]" *Hooper Assoc., Ltd. v AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989). Although parties to a contract may agree to an indemnification provision, including as to attorneys' fees in suits between the parties, such a promise "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.* at 491–92. Consequently, "the court should not infer a party's intention to waive the benefit of the rule" that parties are responsible for their own attorneys' fees "unless the intention to do so is unmistakably clear from the language of the promise." *Id.* at 492.

In *Hooper*, the Court of Appeals addressed a similar indemnification clause to that at issue here, whereby the defendant indemnified the plaintiff "from any and all" claims and damages, including attorneys' fees, "arising out of breach of warranty claims, the performance of any service to be performed, the installation, operation and maintenance of the computer system, infringement of patents, copyrights or trademarks and the like." *Id.* The Court found that "[a]ll these subjects are susceptible to third-party claims," and "[n]one are exclusively or unequivocally referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract." *Id.* Consequently, this clause "d[id] not contain language clearly permitting plaintiff to recover from defendant" its attorneys' fees. *Id.*

The same conclusion applies to the indemnification clause in the Agreement, by which Defendants indemnified Plaintiff for costs that Plaintiff "may sustain or incur by reason of, or in consequence of the execution of such Bonds." Agreement at 1. Nothing in this clause indicates any unequivocal reference to claims between the parties; indeed, the entire subject matter and precipitating cause of the Agreement is Plaintiff's issuance of a Bond under which Plaintiff would face the prospect of claims from a third party, namely, the City. As in *Hooper*, this interpretation "also is supported by other provisions in the contract which unmistakably relate to third-party claims." *Hooper*, 74 N.Y.2d at 492. For example, other language under the "Indemnity to Surety"

654742/2023   THE GUARANTEE COMPANY OF NORTH AMERICA USA vs. XIN DEVELOPMENT                    Page 7 of 9
GROUP INTERNATIONAL, INC. ET AL
Motion No.  003

7 of 9

heading addresses indemnification relating to "defenses available to [Plaintiff] to claims made against any such Bonds"; additionally, the following section, entitled "Claims Against The Surety," exclusively addresses Plaintiff's rights in the context of third-party claims. Agreement at 1–2. "Contrary to [Plaintiff's] contention, [Defendants'] obligation to indemnify was not broadened by the 'any and all' . . . language in the indemnification provision." *Van Deventer v. CS SCF Mgmt. Ltd.*, 47 A.D.3d 503, 504 (1st Dept. 2008). Therefore, it is not "unmistakably clear" that the indemnification provision in the Agreement contemplates intra-party claims. *Hooper*, 74 N.Y.2d at 492.

The cases that Plaintiff cites in support do not compel a different conclusion. In each case, the contract at issue explicitly or implicitly contemplated indemnification for intra-party claims. *See Robbins v. Profile Recs., Inc.*, 266 A.D.2d 67, 67 (1st Dept. 1999) (finding that the indemnification provisions "unequivocally refer to claims between the parties"); *Sagittarius Broad. Corp. v. Evergreen Media Corp.*, 243 A.D.2d 325, 326 (1st Dept. 1997) (finding that "the subject clause cannot reasonably be interpreted as limited to third-party claims," particularly in the context of other clauses in the contract); *437 W. 16th St., LLC v. 17th & 10th Assocs., LLC*, 27 Misc. 3d 1230(A) (Sup. Ct., N.Y. Cnty 2010) (finding that "the indemnification provision also provides that 17th & 10th will indemnify plaintiff for reasonable attorney's fees . . . not limited to" third-party claims). The Court therefore declines to infer a rebuttal of the presumption against indemnification of intra-party claims.

Accordingly, as the indemnification provision of the Agreement does not permit the reimbursement of attorneys' fees in intra-party disputes, summary judgment on Plaintiff's claim for attorneys' fees and costs is denied.

The Court has considered the parties' remaining contentions and finds them to be unavailing.

Accordingly, it is hereby

**ORDERED** that Plaintiff Guarantee Company of North America USA's motion for summary judgment is GRANTED as to Count I, for specific performance; and it is further

**ORDERED** that Defendants are jointly and severally required to specifically perform their obligations under the Agreement and deposit with Plaintiff collateral security in the amount of $3,000,000 within thirty (30) days of the date of e-filing of this Decision and Order; and it is further

**ORDERED** that Plaintiff's counsel shall file a supplemental briefing of no greater than five (5) pages, along with supporting documents and a proposed order, addressing the extent to which it applied the collateral to the overdue Bond premiums, within seven (7) days of the date of e-filing of this Decision and Order. Defendants may file a five (5) page letter in opposition within seven (7) days of Plaintiff filing its submission; and it is further

**ORDERED** that Plaintiff's motion for summary judgment is DENIED as to Count II, for breach of contract, without prejudice; and it is further

654742/2023   THE GUARANTEE COMPANY OF NORTH AMERICA USA vs. XIN DEVELOPMENT          Page 8 of 9
GROUP INTERNATIONAL, INC. ET AL
Motion No.  003

8 of 9

**ORDERED** that Plaintiff's motion for attorneys' fees is DENIED with prejudice.

The foregoing constitutes the Decision and Order of this Court.

_____
**November 18, 2025**
**DATE**

A. R. Patel (signature)

_____
**ANAR R. PATEL, A.J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

654742/2023   THE GUARANTEE COMPANY OF NORTH AMERICA USA vs. XIN DEVELOPMENT          Page 9 of 9
GROUP INTERNATIONAL, INC. ET AL
Motion No.  003

9 of 9